THE STATE OF KANSAS v. GEORGE M. BUFFINGTON.

No. 14,425.    (81 Pac. 465.)

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Defendant as a Witness—Cross-examination.* The defendant, having assumed the character of a witness, was subject to the rules applicable to any witness, and questions as to his past life and conduct which would impair his credibility were not improper.

2. —— *Instruction Properly Refused.* No error was committed in refusing an instruction covering several propositions of law, where the court adopted the better practice of giving each important proposition in a single instruction and arranging all in logical order.

3. HOMICIDE—*Instructions—Self-defense.* An instruction that "if you believe from the evidence that at the time of the shooting in question the said Oda Miller made an attack upon the defendant with a chair, under such circumstances as to create in the mind of a reasonably and ordinarily prudent man a belief that he was in danger of being killed or of receiving great bodily harm immediately, and if you further believe from the evidence that the defendant at the time did

The State v. Buffington.

honestly believe that he was in imminent danger of receiving great bodily harm, and in good faith shot to protect himself therefrom, and if you further believe that the defendant, acting in good faith, did not fire any more shots than he had a reasonable right to believe, under the circumstances in which he was placed, were necessary to protect himself or his wife from death or great bodily harm, then you should find the defendant not guilty," was pertinent and correct.

4. ———— *Definition—Request.* In the absence of a request for a definition of the words "in the heat of passion," the omission to give one is not ground for reversal.

5. ———— *Defendant's Testimony—Instruction Not Misleading.* An instruction that "the defendant is a competent witness in his own behalf, and you have a right to consider his evidence and are to give it such faith and credit as you believe it entitled to receive," when considered in connection with other instructions given, did not imply that any consideration of defendant's evidence was optional with the jury.

6. ———— *Justification—Offense Not Lessened.* Mere words, however abusive and insulting, will not justify an assault, nor constitute a sufficient provocation to reduce to manslaughter what would otherwise be murder.

7. ———— *Points of Law Covered by Instructions.* Points of law applicable to the case in defendant's requests are found to be included in the instructions given to the jury.

Appeal from Ellsworth district court; Rollin R. Rees, judge. Opinion filed July 7, 1905. Affirmed.

*C. C. Coleman,* attorney-general, *Dallas Grover,* county attorney, and *Grattan & Grattan,* for The State.

*Ira E. Lloyd,* and *Charles J. Evans,* for appellant.

The opinion of the court was delivered by

Johnston, C. J.: George M. Buffington was charged with the felonious killing of Oda Miller, and convicted of murder in the second degree. Because of the failure to charge the jury on the lower degrees of the offense that conviction was set aside. (*The State v. Buffington,* 66 Kan. 706, 72 Pac. 213.) On the new trial he was again found guilty of murder in the sec-

ond degree, and has again appealed. The facts were quite fully set out in the first decision, and the testimony at the second trial appears to have been substantially the same as at the first, showing that Miller was an employee of the defendant, and that the tragedy grew out of a dispute between them as to whether Miller and others of the hired men were entitled to pay for working a quarter of a day more than was credited to them by the defendant.

The testimony offered by the state was to the effect that in discussing this claim with one Shepard the defendant made a remark imputing blame to Miller, or rather to the effect that he had shirked in his work. Miller, who was in an adjoining room, came into the room where defendant was, saying: "Look here, old man, you don't know who you're talking about. I will fix you." Buffington, who was sitting in a rocking-chair, said to Miller: "Get out of here, Oda; I don't want anything to do with you." Shepard then interposed, saying to Miller: "Leave the old man alone; we can settle this without trouble." Miller then turned aside, when the defendant said: "Get out of here, Oda, or I will shoot hell out of you." Miller then took hold of the back of the rocking-chair, tipping it forward, and the defendant slid out of it, going down on one knee by the side of an open satchel, in which was a loaded revolver, which he seized. His wife, who had come into the room, threw her arms about his neck, saying: "Oh, don't do that, George!" At the same time she placed her body between him and Miller. While in these positions Miller, who had lifted the chair in front of him, said: "Get out of the way, old lady, and I will fix him." Just then defendant fired a shot at Miller, which was quickly followed by a second one, and Miller in the meantime fell forward against the defendant. Two other shots were fired into his body. Immediately after the shooting Miller was found dead, and four bullet-holes were discovered

in his body—one in his breast and three in his back. Defendant asked some of the men to take Miller's body from the room, and, as no one did so, he went in, seized hold of Miller's feet, and dragged the body face downward out of the room and upon a porch, where it remained all night and until the coroner came on the following day.

There was testimony of coarse and harsh statements made by the defendant after the killing as to the corpse and its disposition. There was testimony that he told a witness that in the scuffle "I grabbed for my gun, and finally I got my gun, and as soon as I got my gun I knew he was a dead man." The defendant claims that Miller made an unprovoked attack upon him, and for his own protection it appeared to be necessary to shoot and kill his assailant. There was the further claim that his wife was not trying to prevent him from using the revolver when she threw her arms around his neck, but placed herself between him and Miller to shelter him from an assault which Miller was making upon him with the uplifted rocking-chair. The state contends that Miller merely used the chair as a shield against the bullets of defendant's gun.

A number of exceptions were taken to rulings upon testimony. The defendant was placed upon the witness-stand and testified upon his own behalf, and upon cross-examination inquiry was made as to past difficulties of a like character to that under investigation. Of this he complains. Having assumed the character of a witness he was subject to the rules applicable to any witness, and questions as to his past life and conduct which would affect or impair his credibility were not improper. The extent to which such an examination may go is largely a matter of discretion with the trial court. (*The State v. Pfefferle,* 36 Kan. 90, 12 Pac. 406; *The State v. Wells,* 54 id. 161, 37 Pac. 1005; *The State v. Greenburg,* 59 id. 404, 53 Pac. 61.)

The questions asked Mrs. Buffington are not deemed to be outside of the boundaries of legitimate cross-examination.

Objections were made to many of the rulings of the court in instructing the jury. Most of the criticisms of the charge are directed at the refusal of requested instructions. Of those refused many were correct statements of the law, but they were fairly covered by the instructions given by the judge in phraseology of his own. The offense, as well as the inferior degrees of the same, was distinctly defined, and the points of law arising under the evidence were fully and carefully stated in separate propositions. In those requested a number included several propositions in a single instruction, but the court adopted the better practice of giving each important proposition in a separate instruction, and arranged them in logical order, so they could be correctly understood and applied. For instance, the sixth request, which was refused, presented certain elements which would reduce the offense from murder to manslaughter, and also related to self-defense. In several of the instructions given the court pointed out the distinctions between murder in the second degree and the several degrees of manslaughter, and in other instructions the jury were advised how far the defendant might go in repelling an attack, presenting every phase of the law of self-defense applicable to the case. Among those on this subject was the following, which largely embraced the points of the refused request:

"If you believe from the evidence that at the time of the shooting in question the said Oda Miller made an attack upon the defendant with a chair, under such circumstances as to create in the mind of a reasonably and ordinarily prudent man a belief that he was in danger of being killed or of receiving great bodily harm immediately, and if you further believe from the evidence that the defendant at the time did honestly believe that he was in imminent danger of receiving

great bodily harm, and in good faith shot to protect himself therefrom, and if you further believe that the defendant, acting in good faith, did not fire any more shots than he had a reasonable right to believe, under the circumstances in which he was placed, were necessary to protect himself or his wife from death or great bodily harm, then you should find the defendant not guilty."

It is contended that in the refusal of several requests the jury were not permitted to consider or make due allowance for the effects of sudden passion, excited by an attack upon the defendant. This criticism is hardly justified. In the twentieth instruction the attention of the jury was directly called to this subject, and they were told that since the killing was admitted it was important to consider whether the killing was purposely and maliciously done, without justification and excuse, "and not done in the heat of passion, upon a sudden and sufficient provocation, before reason had time to resume its sway." In the twenty-first instruction the court, in describing a malicious killing, eliminated one done in a sudden transport of passion, under sufficient provocation. In the twenty-sixth, twenty-seventh and twenty-eighth instructions the court presented the different phases of the law in respect to the taking of life in the heat of passion, telling the jury how that element reduced the grade of the offense and measured the defendant's responsibility. In these instructions this branch of the case was fairly presented to the jury.

There is complaint that the words "in the heat of passion" were not defined, but it may be noted that the court was not asked to define them. It may well be doubted if there is any necessity for defining a phrase which is in such common use as the one in question. The words were doubtless used by the legislature, and by the court, in their general and popular signification, and it is hard to conceive that they were not correctly understood by the jury. It may at least be said that

in the absence of a request for a definition of the words the omission to give one is not ground for a reversal.

Instead of giving a requested instruction that the jury could not disregard the testimony of the defendant the court told them "that the defendant is a competent witness in his own behalf, and you have a right to consider his evidence and are to give it such faith and credit as you believe it entitled to receive." It is contended that the language "you have a right to consider his evidence" implied that they might use their discretion as to whether they would or would not consider it. Although not the best form of expression we do not think that it conveys the idea that the consideration of the defendant's evidence was optional with the jury, because in the same instruction they were specifically told to give his evidence such faith and credit as they believed it was entitled to receive. The general instruction given as to weighing the evidence in the case makes no exception of his, and it is impossible to think that the jury understood that they could overlook his testimony.

The defendant has no reason to complain of the instructions as to malice, or as to the definition of the term.

The court instructed the jury "that no words, however abusive and insulting, will justify an assault or will constitute a sufficient provocation to reduce to manslaughter what would otherwise be murder." The instruction is both appropriate and correct, and within the authorities. (*Murphy v. The State,* 31 Ind. 511; *Boyle v. The State,* 105 id. 469, 5 N. E. 203, 55 Am. Rep. 218; *Crosby v. The People,* 137 Ill. 325, 27 N. E. 49; *People v. Kelly,* 113 N. Y. 647, 21 N. E. 122; *Allen v. United States,* 164 U. S. 492, 17 Sup. Ct. 154, 41 L. Ed. 528; 21 A. & E. Encycl. of L. 179.)

Other criticisms of the instructions are made which have been considered, but which are not deemed to be

material. The evidence did not warrant the submission of an instruction as to manslaughter in the second degree, and it would have been error to charge the jury upon that grade of the offense.

Upon the whole case the court is of the opinion that no prejudicial error was committed at the trial, and that there is sufficient evidence to sustain the verdict of the jury. The judgment is affirmed.

All the Justices concurring.

BURCH, J., not sitting, having been of counsel.