No. 50,375

STATE OF KANSAS, *Appellee,* v. RODNEY W. JACKSON, *Appellant.*
(597 P.2d 255)

Opinion filed July 14, 1979.

*Hugh R. McCullough,* of Topeka, argued the cause and was on the brief for the appellant.

*Frank J. Yeoman, Jr.,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Gene M. Olander,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is an appeal in a criminal action from a jury verdict which found Rodney W. Jackson (defendant-appellant) guilty of one count of second-degree murder (K.S.A. 21-3402) and one count of unlawful possession of a firearm (K.S.A. 21-4204). Various trial errors are asserted on appeal.

The facts briefly summarized are these. On the evening of January 3, 1978, Cecil Richmond, a 65-year-old attendant employed at a self-service gas station at 2001 West 10th Street, Topeka, Kansas, was found murdered in the backroom of the station. The body was discovered by a customer, Jack Renne, at 8:50 p.m.

The initial investigation of the murder revealed that a change wallet was missing from the station, and the victim had been shot six times with a .22 caliber pistol. Police officers further discovered that a customer, Michael O'Connor, was in the station at 8:40 p.m. and left money on the counter when he was unable to find the attendant.

Kenneth Burnett, an employee of a nearby hardware store, testified at the trial. He said he was in the station at 8:35 p.m. and saw a black male, whom he identified as the appellant, there also.

Detective Russell Brooks of the Topeka Police Department testified his investigation revealed that Ms. Jessica Gill had

walked past the station at approximately 8:30 p.m. and had seen the appellant inside. Shortly thereafter she walked back by and noticed the appellant standing at the cash register counting money. Cecil Richmond was alive at that time.

Finally, the preliminary investigation revealed the appellant had been charged with the armed robbery of a taxicab in December of 1976. With this information, officers obtained a warrant to search the appellant's residence near Eskridge, Kansas.

On January 4, 1978, numerous detectives from the Topeka Police Department and officers of the Kansas Highway Patrol converged upon the appellant in Eskridge and arrested him at a location some distance from his home. Detective Leonard Ashworth then read the appellant his *Miranda* rights.

Immediately thereafter Detective James Gilchrist administered a trace metal detection test. Detective Gilchrist testified he advised the appellant the test indicated he had held a firearm shortly before. Apparently the appellant stated he had used a pistol for target practice two days earlier. Officers then accompanied the appellant to his residence in order to obtain the pistol. The search warrant was subsequently executed.

The appellant was then transported back to Topeka. Detective Ashworth testified the appellant made certain incriminating statements to him en route to the police station after he was given a second *Miranda* warning. While the evidence is conflicting, the appellant eventually confessed to the murder of Cecil Richmond during his interrogation at the police station on January 4, 1978.

Before trial the appellant unsuccessfully moved to suppress his confession and the gun seized as a result of the search of his residence. The parties also stipulated to certain testimony to be given by law enforcement officials.

During the trial the appellant objected to Detective Ashworth's testimony relating their conversations en route to Topeka on the basis no *Jackson v. Denno* hearing had been held. The objection was overruled; however, the appellant was given the reports containing the statements. His motions for dismissal and an instruction on the lesser charge of voluntary manslaughter were also denied.

The jury then found the appellant guilty of second-degree murder and unlawful possession of a firearm. Appeal has been duly perfected.

The appellant contends the search warrant and arrest were not supported by probable cause. Here the same facts were relied upon to provide probable cause for both the search and the arrest.

This court has previously ruled that evidence sufficient to support probable cause for an arrest on the part of an arresting officer is also sufficient to support a finding of probable cause by a magistrate in the issuance of a search warrant. *State v. Lamb,* 209 Kan. 453, 467, 497 P.2d 275 (1972), *rev'd in part* 225 Kan. 38, 587 P.2d 861 (1978); see also *State v. Stewart,* 225 Kan. 410, 412, 591 P.2d 166 (1979). The burden is on the prosecution to show an arrest or a search and seizure was lawful and supported by probable cause. Once a court has issued a warrant or upheld a warrantless arrest or search as being supported by probable cause, a presumption of legality attaches. Consequently, one who attacks the validity of the probable cause determination carries the burden of persuasion. *State v. Chiles,* 226 Kan. 140, 595 P.2d 1130 (1979); *State v. Nicholson,* 225 Kan. 418, 423, 590 P.2d 1069 (1979) and cases cited therein.

In the instant case the search warrant was obtained on the basis of Detective Russell Brooks' affidavit. More than sufficient evidence existed to establish probable cause. Two witnesses positively identified the appellant as present at the scene of the crime shortly before the body of the deceased was found. There was a strong probability the appellant was the last person to see the victim alive. In addition, the officers learned the appellant had been arrested previously for the armed robbery of a cab driver. That arrest had resulted in a negotiated plea of guilty to theft over $50. Therefore, we hold both the search warrant and the arrest were supported by evidence of probable cause.

The appellant further states the finding of probable cause is deficient due to several irregularities in the affidavit supporting the search warrant. This argument must fail. The challenged irregularities consist of a failure of the affidavit to specifically allege similarity between the circumstances of his prior conviction and present crime, and a misstatement of the plea to the prior charge as guilty rather than nolo contendere. Such technical irregularities do not affect the substantial rights of the accused pursuant to K.S.A. 22-2511. See also *Brinegar v. United States,* 338 U.S. 160, 175, 93 L.Ed. 1879, 69 S.Ct. 1302 (1949); *State v. Jacques,* 225 Kan. 38, Syl. ¶¶ 4, 5, 587 P.2d 861 (1978); *State v.*

*Ames,* 222 Kan. 88, 92-3, 563 P.2d 1034 (1977). In view of our holding that the search warrant and the arrest were legal, we need not address the appellant's contention that his statements as well as the seized items were fruits of the poisonous tree.

The appellant next asserts the trial court erred in admitting his written confession to the jury because it was involuntarily given. His argument is threefold: he contends he was coerced; he states he did not expressly waive his *Miranda* rights; and finally he asserts he lacked the mental capacity to intelligently and knowingly waive his rights. Under the rules recently enunciated in *State v. White & Stewart,* 225 Kan. 87, 92, 587 P.2d 1259 (1978); *State v. Higdon,* 224 Kan. 720, 722, 585 P.2d 1048 (1978); and *State v. Gilder,* 223 Kan. 220, 227-8, 574 P.2d 196 (1977), these arguments must fail. Moreover, the United States Supreme Court has held in *North Carolina v. Butler,* 441 U.S. 369, 60 L.Ed.2d 286, 99 S.Ct. 1755 (1979), a suspect in custody need not explicitly waive his right to counsel. Waiver can be inferred from the surrounding circumstances.

Here the appellant was informed of his *Miranda* rights at his arrest. Although he did not expressly waive his rights, he did not refuse to speak at that time and he did not ask for an attorney. While being transported from Eskridge to Topeka, the appellant was again advised of his *Miranda* rights. Finally Detective Ashworth read the rights a third time at the initial stationhouse interrogation. The detective testified the appellant stated he understood his rights and wished to proceed. After initial questioning by Detective Ashworth the appellant eventually summoned Detective Donald Mogge and asked to speak with Detective James Gilchrist. Thereafter, the appellant told the detective three versions of what occurred on the night of the murder. Expressing disbelief at the first two versions, Detective Gilchrist testified that the third confession impressed him as truthful, and a written statement was then taken. After carefully observing the demeanor of the witnesses and hearing the testimony at the suppression hearing, the trial court concluded the confession and waiver of rights were knowingly, intelligently and voluntarily given. The appellant was shown to be rational and aware of what he was doing. Clearly he initiated the interview with the police that eventually led to his written statement. We hold substantial, competent evidence exists to support the trial court's finding of voluntariness.

The appellant next argues the trial court erred in failing to declare a mistrial after Detective Ashworth testified from a report concerning certain incriminating statements made en route from Eskridge to Topeka. Apparently the appellant had told Ashworth four or five different stories regarding the origin of the pistol as well as an exculpatory version of the events at the service station. The existence of Ashworth's report came as a surprise to all the parties. When the appellant's counsel complained about the prosecution's failure to comply with the discovery order, the trial court ordered the prosecution to provide a copy pursuant to K.S.A. 22-3212(7). The appellant was also granted the right to recall certain witnesses for further cross-examination in light of the new evidence.

As a general rule terminating a trial and declaring a mistrial is largely within the discretion of the trial court. A clear showing of abuse of discretion must be shown before the decision of a trial court will be set aside on appeal. *State v. McCambry,* 225 Kan. 803, 806, 594 P.2d 222 (1979).

The appellant views the statements as tantamount to a confession. He states that he suffered prejudice because the statements were incriminatory on the charge of unlawful possession of a firearm. The prosecution, on the other hand, contends the statements were essentially exculpatory.

This point is controlled by our recent decisions of *State v. Taylor,* 225 Kan. 788, 790, 594 P.2d 211 (1979); *State v. Cook,* 225 Kan. 259, 261, 589 P.2d 616 (1979); and *State v. Sanders,* 225 Kan. 147, 149-50, 587 P.2d 893 (1978). While the stories about the pistol tended to be incriminatory, the appellant's statements both at the time of his arrest and during his interrogation clearly indicated his illegal possession of the pistol. Furthermore, the facts of his possession were incorporated into his final confession. Therefore, we hold no abuse of the trial court's power of discretion in failing to grant the mistrial has been shown.

The appellant challenges the trial court's refusal to instruct the jury on the lesser offense of voluntary manslaughter. In his signed confession the appellant stated that he was telling Cecil Richmond, the deceased, about an argument with his father. Richmond said to the appellant, "Rodney, no matter what, the man is your father. You have to respect him." Upon hearing those words

the appellant related that he "just went off" and shot Richmond six times with the pistol. The trial court relied upon our decision in *State v. Ritchey,* 223 Kan. 99, 573 P.2d 973 (1977) to find no evidence of sudden quarrel or heat of passion. See also *State v. Coop,* 223 Kan. 302, 307, 573 P.2d 1017 (1978).

It is well established a trial court is not required to instruct on a lesser offense of the crime charged if the evidence at the trial excludes a theory of guilt on the lesser offense. See generally *State v. Taylor,* 225 Kan. at 793; *State v. Blue,* 225 Kan. 576, 580, 592 P.2d 897 (1979); *State v. Trujillo,* 225 Kan. 320, Syl. ¶ 1, 590 P.2d 1027 (1979). We find no error in the trial court's conclusion that evidence of a sudden quarrel or heat of passion sufficient to provoke an ordinary man to similar actions did not exist.

The appellant asserts, however, that his actions should be characterized as "unreasoning rage." When so characterized, he argues the standard for reactions of an ordinary man should not be applicable in deciding whether to instruct on voluntary manslaughter. Instead, he desires an instruction which would test the reactions of a man with a low intelligence quotient and a history of mental disturbance. We note there was little evidence at the trial of the appellant's mental problems.

This court finds no reason to abandon the *objective* standard for measuring sufficiency of provocation as stated in the *Ritchey* and *Coop* decisions. An objective standard precludes consideration of the innate peculiarities of the individual defendant. The fact that his intelligence is not high and his passion is easily aroused will not be considered in this connection. See *People v. Pecora,* 107 Ill. App. 2d 283, 246 N.E.2d 865 (1969), *cert. denied* 397 U.S. 1028 (1970); *State v. McAllister,* 41 N.J. 342, 196 A.2d 786 (1964); *Commonwealth v. Stasko,* 471 Pa. 373, 370 A.2d 350 (1977); see also Perkins on Criminal Law 56, ch. 2 (2d ed. 1969). Thus, we hold the trial court did not err in refusing to instruct on voluntary manslaughter.

Finally, the appellant's contention that under the totality of circumstances he was not accorded a fair trial lacks merit.

Accordingly, the judgment of the lower court is affirmed.