56,457

STATE OF KANSAS, *Appellee*, v. PAUL GUEBARA, *Appellant*.

(696 P.2d 381)

Opinion filed March 2, 1985.

*Randall D. Grisell*, of Loyd & Grisell, of Garden City, argued the cause and was on the brief for the appellant.

*Jay C. Hinkel*, county attorney, argued the cause, and *Robert T. Stephan*, attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal in a criminal action in which the defendant-appellant, Paul Guebara, was convicted of murder in the first degree (K.S.A. 21-3401). It was undisputed that the defendant shot and killed his wife, Genny Guebara. The defendant admitted the homicide in his testimony at the trial. The only issue raised on the appeal is that the trial court erred by failing to instruct the jury on the lesser included offense of voluntary manslaughter as defined in K.S.A. 21-3403.

At the trial, the factual circumstances were not greatly in dispute and essentially were as follows: Defendant Paul Guebara and Genny Guebara were common-law husband and wife, having declared themselves married in 1980. There were two children living with the couple: Sylvia Dawn Guebara, the

natural child of the defendant, and Candice Ann Virgil, the natural child of Genny. Their marital relationship was characterized by frequent arguments and occasional violence. In February 1983, Genny filed for divorce. About the same time she also filed criminal charges against the defendant alleging misdemeanor battery and misdemeanor theft. On February 15, 1983, the defendant was served with a misdemeanor warrant by Ms. Anna Gallardo, a Finney County deputy sheriff who is related to the Guebara family by marriage. She testified that she had a conversation with defendant at the sheriff's office on the day before the shooting. She first saw him in the morning when he came to inquire where his divorce hearing was going to be held. She showed him a copy of the warrant and told him what the misdemeanor charges were. She told him to come back to the office at 2:30 p.m. to take care of the warrant and appear before the court.

He returned and appeared before the magistrate at 2:30 p.m. that afternoon. Following the hearing, she had a conversation with him in the sheriff's conference room. They discussed the divorce, and defendant told her he was very upset that the divorce was going on. He said that it made him very angry. He told her at different points in the conversation that he was going to kill Genny and that, if he did, he was not going to fight it—that he was going to turn himself in to the sheriff. He told her that he did not want to kill Genny but, when she made him angry, he could not hold back. Following the conversation, Ms. Gallardo concluded that he was not serious and was not really going to do anything. She did not report the conversation to anyone.

On February 16, 1983, the date of the shooting, Sylvia Dawn Guebara was staying with defendant at defendant's parents' house in accordance with an agreed visitation schedule. Genny and two of her friends arrived at the house to pick Sylvia up. Genny and another woman left the pickup truck and approached defendant, who was standing on the porch. At that point, defendant handed Genny the criminal process papers. According to defendant's testimony, when he handed Genny the papers, she stated that she tried to drop the charges but the assistant county attorney would not let her. The defendant testified that he immediately became angry, pulled out his gun, and started shooting her. According to defendant, he did not think about the

act; it was a sudden impulse to shoot without reflection. A prosecution witness testified that Genny attempted to walk past defendant to the house after defendant refused to accept back the process papers. He grabbed her arm and turned her around towards him, displaying a gun. Genny turned her head and defendant fired the gun at her. Genny then stepped back, brought her hands up, and defendant fired the gun again. Then Genny turned and ran or stumbled toward the pickup truck. Defendant followed her into the street firing several additional shots. As Genny was lying in the street, defendant ran toward the house, throwing the gun at the house and immediately ran to the Finney County Law Enforcement Center where he turned himself in to a sheriff's employee.

Edwin C. Knight, Jr., a Garden City police officer who investigated the shooting, was advised that defendant Guebara was at the law enforcement center. Defendant had been placed under arrest by the sheriff's department. According to the officer, he advised defendant of his *Miranda* rights and defendant signed an acknowledgment and a waiver. The officer then took a statement from defendant. Defendant advised him that he had been having problems with his wife, referring to the pending divorce and to the fact that Genny had implicated him in misdemeanor theft and battery charges. Defendant stated that he was depressed and upset. The officer asked defendant if he had shot his wife, and defendant admitted it. Defendant stated to the officer that he had thought about shooting her the day before and that he had thought about shooting her just prior to her arrival at the house. The officer asked defendant whether he intended to shoot her, and defendant replied that he had planned to shoot her.

On cross-examination the police officer testified that defendant told him defendant had smoked one and one-half joints of marijuana just before his wife arrived on the scene. Defendant informed him that, when he first pulled the gun out, he did not intend to shoot his wife and did not intend to shoot her with the first shot. The evidence presented by the defense at the trial sought to prove that the defendant was a person who, when put into pressure situations, was likely to respond in a violent, impulsive, quick manner. Defendant was characterized as a person who showed indications of gross thought disorder which might lead to an inability to assess reality accurately and respond

to it accordingly. Defendant was described as an action-oriented person who could act in an assaultive manner.

The defense called to the witness stand a staff psychiatrist at Larned State Security Hospital who diagnosed defendant to have an anti-social personality disorder. She testified that, when a person with an anti-social personality disorder uses drugs such as marijuana, it is possible for the individual to have altered judgment and maladaptive behavior. The use of marijuana by such a person would have a tendency to worsen the individual's judgment, and if the individual had an aggressive personality, the use of the drugs would probably make the person more aggressive. Although defendant testified he had smoked marijuana shortly before the shooting, there was no evidence he was under the influence of drugs.

Defendant's father, mother, and a cousin testified that defendant was a quick-tempered person who typically reacted violently when put in pressure situations. His mother testified, in substance, that her son would make threats but never carried out his threats. Simply stated, defendant sought to prove that his actions were the result of an emotional state of mind characterized by anger and resentment which caused defendant to act on impulse without reflection. It was the position of the defense that the actions of the defendant were provoked by his wife's inability to arrange for the dismissal of the criminal charges which she had initiated against her husband and that his response to the situation was impulsive and not premeditated. Hence, the defense argued, he could only be found guilty of voluntary manslaughter.

At the close of the evidence, the defendant's counsel requested the trial court to instruct the jury on the lesser included offense of voluntary manslaughter as defined by K.S.A. 21-3403. The trial court instructed the jury on murder in the first and second degree but refused to give the requested instruction on voluntary manslaughter. In making its ruling, the trial court reasoned that two elements must exist to prove voluntary manslaughter: First, there must be evidence of an emotional state constituting heat of passion and, second, there must be a sufficient provocation. The trial court concluded that the refusal of a person to dismiss misdemeanor criminal charges arising from a domestic squabble was not a sufficient legal provocation to kill.

The case was submitted to the jury and defendant was convicted of murder in the first degree. Defendant then appealed and, as noted above, the sole issue is whether the trial court erred in failing to instruct the jury on the lesser included offense of voluntary manslaughter.

The defendant maintains that an instruction on voluntary manslaughter was required under the provisions of K.S.A. 21-3107(3) which provides, in substance, that in cases where the crime charged may include some lesser crime, it is the duty of the trial court to instruct the jury, not only as to the crime charged, but as to all lesser crimes of which the accused might be found guilty under the information or indictment and upon the evidence adduced. This court has held that the requirement of K.S.A. 21-3107(3) is based upon the right of a defendant to have his theory of the case presented to the jury under appropriate instructions where there is support in the evidence, even though the evidence may be weak, inconclusive, and consists of testimony of the defendant alone. If it tends to show the lesser degree of the crime, that is sufficient to require the court to so instruct. *State v. Clark*, 214 Kan. 293, 299, 521 P.2d 298, *modified* 215 Kan. 1, 522 P.2d 411 (1974); *State v. Buffington*, 66 Kan. 706, 709-10, 72 Pac. 213 (1903). The evidence of a lesser included offense need not be strong or extensive as long as it presents circumstances from which the lesser offense might reasonably be inferred. Furthermore, unsupported testimony alone, if tending to establish such inferior degree, is sufficient to require the court to so instruct. If there is no substantial evidence under which the defendant might reasonably be convicted of the lesser offense, an instruction on the lesser offense is not required. *State v. Williams*, 235 Kan. 485, 681 P.2d 660 (1984). Likewise, if the defendant's evidence excludes a theory of guilt on the lesser degree of crime the instruction is not required. *State v. McDermott*, 202 Kan. 399, 449 P.2d 545, *cert. denied* 396 U.S. 912 (1969).

The basic issue before us is whether there was sufficient evidence presented in the case to support the defendant's theory that the killing was committed in the heat of passion under such circumstances as to require the requested instruction on voluntary manslaughter. At the outset, it would be helpful to review some of the Kansas cases on the subject and to note the general

principles of law which have been applied in resolving the issue presented. These general principles may be summarized as follows:

(1) Voluntary manslaughter is the intentional killing in the heat of passion as a result of severe provocation. As a concession to human frailty, a killing, which would otherwise constitute murder, is mitigated to voluntary manslaughter. 2 Wharton's Criminal Law § 153 (Torcia, 14th ed. 1979).

(2) "Heat of passion" means any intense or vehement emotional excitement of the kind prompting violent and aggressive action, such as rage, anger, hatred, furious resentment, fright, or terror. Such emotional state of mind must be of such a degree as would cause an ordinary man to act on impulse without reflection. *State v. Jones*, 185 Kan. 235, Syl. ¶ 2, 341 P.2d 1042 (1959); *State v. McDermott*, 202 Kan. 399; *State v. Ritchey*, 223 Kan. 99, 573 P.2d 973 (1977); *State v. Coop*, 223 Kan. 302, 573 P.2d 1017 (1978).

(3) In order to reduce a homicide from murder to voluntary manslaughter, there must be provocation, and such provocation must be recognized by the law as adequate. A provocation is adequate if it is calculated to deprive a reasonable man of self-control and to cause him to act out of passion rather than reason. 2 Wharton's Criminal Law § 155. In order for a defendant to be entitled to a reduced charge because he acted in the heat of passion, his emotional state of mind must exist at the time of the act and it must have arisen from circumstances constituting *sufficient provocation. State v. McDermott*, 202 Kan. at 402; *State v. Ritchey*, 223 Kan. 99, Syl. ¶ 2; *State v. Coop*, 223 Kan. 302; *State v. Jackson*, 226 Kan. 302, 597 P.2d 255 (1979), *cert. denied* 445 U.S. 952 (1980).

(4) The test of the sufficiency of the provocation is objective, not subjective. The provocation, whether it be "sudden quarrel" or some other form of provocation, must be sufficient to cause an ordinary man to lose control of his actions and his reason. *State v. Coop*, 223 Kan. 302; *State v. Ritchey*, 223 Kan. 99. In applying the objective standard for measuring the sufficiency of the provocation, the standard precludes consideration of the innate peculiarities of the individual defendant. The fact that his intelligence is not high and his passion is easily aroused will not be considered in this connection. *State v. Jackson*, 226 Kan. at 307.

(5) Mere words or gestures, however insulting, do not constitute adequate provocation, but insulting words when accompanied by other conduct, such as assault, may be considered. 2 Wharton's Criminal Law § 156. In *State v. Buffington*, 71 Kan. 804, 81 Pac. 465 (1905), it was held that the trial court properly instructed the jury that no words, however abusive and insulting, will justify an assault or will justify a sufficient provocation to reduce to manslaughter what otherwise would be murder. See also *State v. Hardisty*, 121 Kan. 576, 249 Pac. 617 (1926).

(6) An assault or battery resulting in a reasonable belief that the defendant is in imminent danger of losing his life or suffering great bodily harm may be of sufficient provocation to reduce the killing to voluntary manslaughter. 2 Wharton's Criminal Law, § 158.

(7) If two persons engage in mutual combat, the blows given by each are adequate provocation to the other; thus, if one kills the other, the homicide may be reduced to voluntary manslaughter. 2 Wharton's Criminal Law § 159.

With these basic principles in mind, we now turn to a consideration of the factual circumstances of this case as set forth above in detail. We have concluded that the trial court did not err in refusing to give the defendant's requested instruction on voluntary manslaughter. We agree with the trial court that, although the requisite emotional state necessary to constitute heat of passion was present, the evidence in the record does not show that the defendant's emotional state of mind arose from circumstances constituting sufficient provocation. The record is devoid of any evidence that on February 16, 1983, Genny Guebara was quarrelsome or that she committed any aggressive acts or physical threats directed toward the defendant. The evidence was undisputed that, after defendant handed her the warrant in the criminal proceeding, she simply handed it back to him and turned to leave and that defendant immediately pulled his gun and fired the shots. Genny Guebara made no attempt to strike her husband or to interfere with his movements in any way. In fact, there was no evidence that she ever used abusive or insulting words toward him.

Actually, this case is not as difficult as some of the other cases where we have held that the trial court did not err in denying a requested instruction on voluntary manslaughter, where the

defendant was charged with murder. We note, for example, *State v. McDermott*, 202 Kan. 399, where the defendant and his wife had been having marital difficulties. They met at a parking lot and an argument ensued. He tried to force her to get in his automobile and she refused. According to the defendant, she reared back and almost threw him off his feet. He testified that he took her by the shoulder nice and easy and told her to "calm down." He asked about their youngster, and she said, "That's nobody's God damned business." At that time he fired the gun. It was held that this evidence was insufficient to show that the defendant acted in heat of passion provoked by circumstances constituting legal provocation for his emotional state.

In *State v. Stafford*, 213 Kan. 152, 515 P.2d 769 (1973), *modified* 213 Kan. 585, 518 P.2d 136 (1974), the defendant was convicted of shooting her husband. She and her husband got into an argument because of his remarks about her son-in-law and a friend. As she was standing in the kitchen preparing to make coffee he struck her behind the left ear, knocking her glasses off. The blow did not bruise or hurt her. She then squirted him in the face with a paralyzer spray from a pressurized can. This dazed him and, as he was trying to rub the spray out of his eyes, she wrapped the cord from the electric tea kettle around his neck and choked him with it. She grabbed him by what little hair he had on his bald head and threw him against the wall. She then threw him down on the floor and got astraddle of him with her knees on his arms. She picked up a hammer and hit him with it three or four times. The husband's death was caused by strangulation. This court held that, although there was some evidence of prior quarreling or even a blow on occasions, insufficient provocation existed to reduce the charge to voluntary manslaughter.

In *State v. Coop*, 223 Kan. at 304, both the defendant and his deceased wife were alcoholics and were extremely intoxicated at the time of the homicide. The undisputed evidence showed that a violent fight occurred which was characterized as a drunken brawl. There were signs of a struggle in the house. The defendant's hair was found under his wife's ring on her finger. In spite of this evidence of a violent drunken quarrel, this court held that the evidence was not sufficient to require an instruction on voluntary manslaughter as a lesser included offense of the charge of murder.

As this court has held many times before, a court must apply an objective standard for measuring the sufficiency of the provocation. In doing so, the court should not consider the innate peculiarities of the individual defendant. We hold that the trial court did not err in refusing to instruct on voluntary manslaughter.

The judgment of the district court is affirmed.