No. 57,842

STATE OF KANSAS, *Appellee*, v. ELMER E. BARNCORD, III, *Appellant*.

(726 P.2d 1322)

Opinion filed October 31, 1986.

*Ronald E. Wurtz*, of Topeka, argued the cause and was on the brief for the appellant.

*Gene M. Olander*, district attorney, argued the cause, and *Robert T. Stephan*, attorney general, and *Sue Carpenter*, assistant district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is a direct appeal from jury convictions of first-degree murder (K.S.A. 21-3401) and aggravated robbery (K.S.A. 21-3427). The issues on appeal are whether amendments made to the criminal complaint were prejudicial, whether there was prosecutorial misconduct, and whether the jury was properly instructed.

On the night of August 14, 1984, the body of Carl James Baldwin was discovered on a stairway of the Kansas Avenue bridge in Topeka, Kansas. He had been stabbed 65 times. Carl Baldwin had last been seen in the company of the defendant, Elmer "Butch" Barncord, and Henry Johnson at the Cowboy Palace, a local bar located approximately one-half mile from the place where the body was discovered. Mr. Baldwin was buying drinks at the bar and flashing a large amount of money. When the three men left the bar together, one witness noted the defendant was carrying a bone-colored fixed knife in his back pocket. Butch and Henry returned to the bar approximately fifteen to twenty minutes later, without Carl Baldwin. Dark stains were observed on the defendant's jeans. The two men went into the restroom together where they remained for quite a while. Bloody towels were later discovered in the restroom. Henry was heard to make a statement to the effect that they had stabbed Baldwin at the north end of the Kansas Avenue bridge. Butch was heard to say, "We just mugged somebody and what it got us was five dollars." A call was made to the police to report that a person at the bar had blood on his clothing. Henry was arrested at the bar. The defendant was arrested approximately an hour later. He was wearing jeans which were soiled with a very deep red color. The defendant gave a statement to police that he had stabbed Baldwin. However, at trial the defendant testified Henry had stabbed Baldwin while the defendant watched in shock; finally, the defendant stabbed Henry in the leg in order to make Henry stop stabbing Baldwin.

The first issue on appeal has to do with three amendments made to the original complaint by the State during the course of

the trial: (1) an amendment made to the charge of first-degree premeditated murder to include felony murder; (2) an amendment made to the charge of aggravated robbery to add the words "by force"; and (3) a second amendment made to the charge of aggravated robbery to delete the language "black handled buck knife," leaving a description of the dangerous weapon used as "a knife."

At the end of the preliminary hearing held August 31, 1984, the State orally moved to amend Count I of the original complaint to include both premeditated murder, as was originally charged, and, in the alternative, felony murder. The district court judge, William Carpenter, took the matter under advisement, briefs were submitted, and on September 27, 1984, the court entered an order granting the State's oral motion to amend. The defendant's trial was originally set for November 8, 1984, but was continued due to the illness of the prosecutor, Sue Carpenter. On November 26, 1984, the first day of the rescheduled trial, at 4:53 p.m., the State filed an amended complaint. Two days later, after voir dire but before the jury was impaneled, the trial judge, Franklin Theis, noted to counsel problems he perceived with the amended complaint of Count II, the aggravated robbery charge: the words "by force" were omitted which are required under the decision of *State v. Howell & Taylor*, 226 Kan. 511, 601 P.2d 1141 (1979). It was at this time defense counsel first became aware an amended complaint had been filed.

The defendant first argues it was error to allow the amendment of felony murder to be filed during trial after the defense had prepared only for the crime of premeditated murder, thinking the State had abandoned its intention to pursue the alternative charge of felony murder.

Actually, the amendment to include felony murder was not necessary. In *State v. Foy*, 227 Kan. 405, 607 P.2d 481 (1980), the State amended the information to allege felony murder less than a week before trial. This court ruled an amendment to the information was not actually necessary, for an information in the ordinary form charging that a killing was done with malice aforethought, deliberation, and premeditation is sufficient to sustain a conviction of murder in the first degree committed in the perpetration of a felony. 227 Kan. at 408. See *State v. Foy*, 224 Kan. 558, 566, 582 P.2d 281 (1978); *State v. Turner*, 193 Kan. 189, 195, 392 P.2d 863 (1964).

Furthermore, had an amendment been required, K.S.A. 1985 Supp. 22-3201(4) provides a two-part analysis to determine whether an amendment should be permitted:

"The court may permit a complaint or information to be amended at any time before verdict or finding if no additional or different crime is charged and if substantial rights of the defendant are not prejudiced."

The defendant agrees no different or additional crime was charged. Premeditated murder and felony murder are not separate and distinct offenses. Rather, a prosecution under the felony-murder rule changes the type of proof necessary to prove first-degree murder. *State v. McCowan*, 226 Kan. 752, 759, 602 P.2d 1363 (1979), *cert. denied* 449 U.S. 844 (1980). The State is relieved of the burden of proving premeditation and malice when the victim's death is caused by the killer while he is committing another felony. *State v. Underwood*, 228 Kan. 294, 302-03, 615 P.2d 153 (1980).

Addressing the second half of K.S.A. 1985 Supp. 22-3201(4), a factor to be considered bearing upon prejudice to the substantive rights of the defendant is whether the amendment came as a surprise to the defendant. *State v. Johnson*, 223 Kan. 185, 190, 573 P.2d 595 (1977); *State v. Hill*, 211 Kan. 239, 242, 505 P.2d 704 (1973). Here, the defendant knew Judge Carpenter had previously granted the State's oral motion to amend the complaint. Evidence at the preliminary hearing supported both theories and defense counsel heard that evidence. After the trial was continued due to the prosecutor's illness, defense counsel noted to the court no amendment had been formally filed and the court directed the State to file the amendment. Defendant cannot claim the amendment came as a surprise and the defendant has failed to establish how he was prejudiced by the amendment.

Turning to the amendment made to Count II, the aggravated robbery charge, to include the language "by force," the defendant argues the complaint was fatally defective, thus the court had no jurisdiction from the beginning and had no authority to amend the complaint.

In a prosecution for a felony, the indictment or information is the jurisdictional instrument upon which an accused stands trial. A conviction based upon an information which does not sufficiently charge the offense for which the accused is convicted is

void. *State v. Bird*, 238 Kan. 160, 166, 708 P.2d 946 (1985); *State v. Robinson, Lloyd & Clark*, 229 Kan. 301, 304, 624 P.2d 964 (1981). It is fundamental that if the facts alleged in an information do not constitute an offense within the terms and meaning of the statute upon which it is based the information is fatally defective. *State v. Howell & Taylor*, 226 Kan. at 513; *State v. Doyen*, 224 Kan. 482, 488, 580 P.2d 1351 (1978); *State v. Bishop*, 215 Kan. 481, 482, 524 P.2d 712 (1974).

In *State v. Howell & Taylor*, 226 Kan. 511, the case upon which the district court relied, the defendant was charged and convicted of aggravated robbery. The information charged that the defendant had "unlawfully feloniously and willfully taken property, to-wit: a 1975 Dodge Van . . . from the person of Gene Swarz, while the said [defendant was] armed with a dangerous weapon, to-wit: a pistol." 226 Kan. at 512. The information failed to allege that the taking was by force or by threat of great bodily harm. This court reversed the defendant's conviction of aggravated robbery ruling the information was fatally defective: the additional element of taking by force or by threat of bodily harm is an essential element which must be stated in the information. 226 Kan. at 514.

In the instant case, Count II of the original complaint read as follows:

"On or about the 14th day of August, 1984, in the County of Shawnee and State of Kansas, Elmer E. Barncord, III did then and there unlawfully, feloniously and willfully take property, to-wit: $14.00 in cash from the person of Carl J. Baldwin while the said Elmer E. Barncord, III was armed with a dangerous weapon, to-wit: a black handled buck type knife *and by inflicting great bodily harm* upon the said Carl James Baldwin." (Emphasis added.)

The words "by force" in the amended complaint were added as follows, "[The defendant] did then and there unlawfully, feloniously and willfully take property, to-wit: $14.00 in cash *by force* from the person of Carl J. Baldwin . . . ." (emphasis added). The words "and by inflicting great bodily harm" were not deleted in the amended complaint.

In determining the sufficiency of an information, it is not necessary to use the exact words of the statute if the meaning is clear. K.S.A. 1985 Supp. 22-3201(2); *State v. Robinson, Lloyd & Clark*, 229 Kan. at 304; *State v. Washington*, 226 Kan. 768, 772, 602 P.2d 1377 (1979). An information which charges an offense in the language of the statute or its equivalent is sufficient. *State*

*v. Lucas*, 221 Kan. 88, 89, 557 P.2d 1296 (1976); *State v. Barry*, 216 Kan. 609, 619, 533 P.2d 1308 (1974). We find the language, "and by inflicting great bodily harm" is equivalent in meaning to the words "by force." Therefore, the amendment to add the words "by force" was not necessary.

The defendant argues the involvement of the trial judge in bringing to the attention of counsel the case of *State v. Howell & Taylor*, 226 Kan. 511, removed the impartiality of the trial judge, severely handicapped the defense counsel in their representation of the defendant, and denied the defendant a fair trial. This argument is without merit. In *State v. Foy*, 227 Kan. 405, defense counsel sought, but failed, to have a district court judge disqualified who wrote a letter to the county attorney suggesting that if the State intended to rely on a felony-murder theory at trial, the State should amend the information to charge felony murder. On appeal, this court ruled the amendment was not legally required and, as the judge's letter was only a suggestion to the county attorney, the judge need not be disqualified. Here, as previously stated, the amendment was not legally necessary and the judge's mentioning of the case law did not handicap the defendant.

Finally, the defendant argues the third amendment made to the original complaint, deleting in the aggravated robbery charge the specific description of the knife used by the defendant, severely compromised his right to a fair trial and the effective assistance of well-prepared counsel. The defendant argues that because his defense was that he was a mere bystander and shocked observer of the stabbing of Carl Baldwin by Henry Johnson, who used a black-handled buck knife, the particular description of the knife stated in the complaint was a key to proving to the jury the defendant was neither a principal nor an aider or abettor of Johnson.

Prior to the amendment, the coroner was the only witness who had testified regarding the weapon used to kill the victim. The State showed the doctor the bone-handled knife, and he responded the injuries were consistent with that weapon. When the State was questioned by defense counsel whether the State had the other knife, the black-handled buck knife, and whether the State was going to mark it as a State's exhibit, the State responded it was not the State's intention to introduce evidence pertaining to Henry Johnson. In separate proceedings, Henry

Johnson was convicted of first-degree murder and aggravated robbery upon his pleas of nolo contendere. See *State v. Johnson,* 239 Kan. 124, 716 P.2d 192 (1986). The black-handled knife was marked as defendant's Exhibit No. 1 and on cross-examination, the coroner testified either knife, the bone-handled or black-handled knife, would have done most of the injuries to the victim. After talking with another witness scheduled to testify, the State realized there was an error in the amended complaint and moved for an amendment. The district court allowed the State to amend the charge to read "[Defendant] was armed with a dangerous weapon, to-wit: a knife," thereby striking the description of the knife as a black-handled buck knife.

It is a general rule of law that unnecessary allegations in an information, such as the caliber of a pistol used in a robbery, are surplusage and failure to prove the exact nature of those allegations does not constitute a fatal defect. *State v. Johnson,* 223 Kan. 185, 190, 573 P.2d 595 (1977); *State v. LeVier,* 202 Kan. 544, 548, 451 P.2d 142 (1969); *State v. Lee,* 197 Kan. 463, 465, 419 P.2d 927 (1966), *cert. denied* 386 U.S. 925, *reh. denied* 386 U.S. 978 (1967). The defendant relies on *State v. Johnson,* 223 Kan. 185, to support his argument the amendment prejudices his rights. *Johnson,* however, is factually distinguishable from the instant case. In *Johnson,* two handguns were found in the car which the defendant was driving—a .32-caliber revolver and a .22-caliber semi-automatic pistol. Ammunition for the semi-automatic pistol was recovered from the defendant's pockets. The original information, charging the defendant with felony possession of a firearm, alleges the defendant possessed "a small caliber *revolver.*" At closing argument, the defendant argued the State had failed to prove the defendant was in possession of a revolver because the evidence showed the revolver was found underneath the passenger's seat which had been occupied by another person and the ammunition found on the defendant would not fit the revolver. After closing argument, the State was allowed to amend the charge to possession of "a small caliber *pistol.*" On appeal, this court found the defendant's substantial rights were prejudiced by the amendment because the defendant had been charged with the possession of a particular handgun and, as two different handguns had been recovered, the defendant's defense hinged on the particular description alleged in the complaint.

Here, while two knives were recovered (the black-handled knife was recovered from Henry Johnson and the bone-handled knife was recovered from the defendant's house), the defendant's defense was that he was a shocked observer of the stabbing and robbing by Henry Johnson. That defense does not hinge on the particular description of the knife alleged in the complaint. Only one witness had testified concerning the knives prior to the amendment. Witnesses who testified after the amendment was allowed stated Henry and the defendant each possessed knives prior to the murder and that after the murder and before returning to the bar Henry had both knives. There was also testimony that Johnson was carrying the defendant's knife in his sock because it was bloody. The defendant admitted Johnson was carrying the defendant's knife inside his sock. We do not find the defendant's substantial rights were prejudiced by amending the complaint from a specific description of a weapon to a general description.

Next, the defendant argues he was prejudiced by the failure of the State to exercise due diligence to discover prior to trial the existence of statements made by the defendant and Johnson to two witnesses, Marilyn Rice and Sheryl Bowers. These witnesses had not testified at the preliminary hearing. After the trial had commenced, but before the State had begun to present its case in chief, the State notified defense counsel of its intention to present testimony from these witnesses concerning statements allegedly made by the defendant and Johnson. A hearing was held outside the presence of the jury to screen the testimony of these witnesses. Their testimony at trial was allowed. Ms. Rice testified the defendant made the remark, "We just mugged somebody and what it got us is $5." During extensive cross-examination Ms. Rice admitted she had never told the police about the defendant's statement. The police report, of which defense counsel was provided a copy prior to trial, stated, "Reporting officer asked Rice if she had any conversations with these three men and she advised me that she had not." Ms. Bowers testified Johnson had told her they had stabbed Carl Baldwin on the north end of the bridge. She asked him if it was worth it and the defendant replied they had "only got a few dollars." On extensive cross-examination, Ms. Bowers admitted she had failed to include this in her statement to the police.

K.S.A. 22-3212(1) provides for pretrial discovery as follows:

"Upon request, the prosecuting attorney shall permit the defendant to inspect and copy or photograph any relevant . . . (d) memoranda of any oral confession made by the defendant and a list of the witnesses to such confession, the existence of which is known, *or by the exercise of due diligence may become known to the prosecuting attorney*." [Emphasis added.]

The defendant's whole argument is that the State failed to exercise due diligence in determining whether confessions made by the defendant to third parties existed. We find the defendant's argument is without merit. Neither of the witnesses' police statements indicated any oral confession by the defendant or Johnson had been heard. Therefore, the State was not alerted prior to trial to pursue the matter. Upon preparing the witnesses for trial, the State became aware of the statements. Defense counsel was notified and was able to cross-examine the witnesses at the pretrial hearing and to impeach their testimony at trial with their prior statements to the police. There is nothing in the record to indicate the State purposefully failed to disclose the evidence. Evidence not disclosed to the defendant before trial is not suppressed or withheld by the State if the defendant has personal knowledge thereof, or if the facts become available to him during trial and he is not prejudiced in defending against these new facts. *State v. Cook*, 225 Kan. 259, 261, 589 P.2d 616 (1979); *State v. Glazer*, 223 Kan. 351, 357-58, 574 P.2d 942 (1978); *State v. Walker*, 221 Kan. 381, 383, 559 P.2d 381 (1977). The defendant had ample opportunity to cross-examine these witnesses and, accordingly, he was not prejudiced in defending against having made the statements.

The defendant complains he was denied pretrial discovery by a blackout of information caused by the police. At trial, three witnesses, David Ralston, Sheryl Bowers, and Marilyn Rice, admitted during cross-examination they had refused to talk to defense counsel about the case. Mr. Ralston testified he was told by police on the night of the murder not to discuss the murder with anyone but the district attorney. The defendant argues the actions of the police cut off attempts to discover the State's case through investigation.

A defendant is entitled to have access to any prospective witness although such right of access may not lead to an actual interview. A witness may refuse to be interviewed or may dictate circumstances under which he will submit to an interview.

*United State v. Brown*, 555 F.2d 407, 425, *reh. denied* 559 F.2d 29 (5th Cir. 1977), *cert. denied* 435 U.S. 904 (1978). Although the State has no right to deny the accused and his counsel the right to interview witnesses, the witness cannot be compelled to submit to such an interview. *Emmett v. State*, 232 Ga. 110, 113, 205 S.E.2d 231 (1974). A witness has a right to refuse to submit to questioning by counsel prior to trial. *People v. Brown*, 87 Ill. App. 3d 368, 372, 409 N.E.2d 81 (1980).

As to David Ralston, who testified that on the night of the murder the police told him to talk only to the district attorney, the defendant has not shown any demonstrable prejudice. The defendant admits the prosecutor did not know the police had made such a statement to Ralston. Ralston testified fully at the preliminary hearing and any statement made by him was available to the defense pursuant to K.S.A. 22-3213. Neither Bowers nor Rice testified that the police told them to talk only to the district attorney; rather, they simply refused to talk to defense counsel. The defendant extensively cross-examined them, as previously stated, and we find the defendant has failed to show any demonstrable prejudice by not being able to interview them prior to trial.

The defendant argues he was further prejudiced by the behavior of Detective Hubert. First, Detective Hubert mentioned at trial, without being asked by the State, that the defendant, Johnson, and the victim had all served time together in Hutchinson. There was an order on file that no reference would be made directly or indirectly to the criminal record of the defendant.

In *State v. Mitchell*, 220 Kan. 700, 556 P.2d 874 (1976), the court was faced with a similar situation. A detective erroneously referred to the defendant's "prior" similar offense. The remark was stricken by the trial judge and the jury admonished to disregard the remark. On appeal this court stated:

"If any error was committed by Detective Rainey's remark, we hold the unsolicited and unresponsive remark constituted harmless error under the circumstances. (*State v. Robinson*, 219 Kan. 218, 547 P.2d 335; *State v. Bradford*, 219 Kan. 336, 548 P.2d 812; and *State v. Childs*, 198 Kan. 4, 11, 422 P.2d 898.) These cases dealt with an unforeseeable and unresponsive answer to a proper question. The cases recognize it is impossible for the court in advance to exclude an improper answer to a proper question. Therefore, the cases seem to turn on whether a limiting instruction was given and the degree of prejudice. In the case

at bar any possible prejudice to the appellant was cured by the court's admonition to the jury. (*State v. Bradford*, [219 Kan.] at 338; *State v. Holsey*, 204 Kan. 407, 464 P.2d 12.)

"A defendant is entitled to a fair trial but not a perfect one. The erroneous admission of evidence during a trial does not in every case require a reversal of a conviction. It is only where the erroneous admission of evidence is of such a nature as to affect the outcome of the trial and amounts to denial of substantial justice that a conviction must be reversed. [Citations omitted.]" 220 Kan. at 703-04.

Here, the trial court immediately admonished the jury to disregard Detective Hubert's remark. In light of the vast trial transcript, the defendant's own statements indicating his participation in the crimes, and the physical and circumstantial evidence produced at trial, the error had little, if any, likelihood of affecting the outcome of the trial.

Second, it was discovered that, as Detective Hubert was testifying, he was using field notes taken during the defendant's interrogation to refresh his memory. He had previously been requested by the State and the defense to turn over everything he had "prepared" concerning this case. The defendant argues he was prejudiced by the failure of Detective Hubert to turn over the field notes.

In *State v. Jackson*, 226 Kan. 302, 597 P.2d 255 (1979), *cert. denied* 445 U.S. 952 (1980), a detective testified at trial from an undisclosed report concerning statements made by the defendant. All parties were surprised by the existence of the report. Defense counsel complained the State had failed to comply with the discovery order. The trial court ordered the State to provide a copy of the report to the defendant and the defendant was granted the right to recall certain witnesses for further cross-examination. This court ruled the trial court did not err in refusing to grant the defendant's motion for a mistrial as the facts in the report were incorporated into the defendant's final confession. 226 Kan. at 306.

Here, as soon as the existence of the field notes was discovered, a hearing was held outside the presence of the jury. At that hearing it was discovered the detective had made three reports: (1) his handwritten field notes taken during the defendant's interrogation; (2) a handwritten police report prepared from the field notes; and (3) a typewritten report transcribed from the handwritten report. The handwritten and typewritten reports were turned over to the State and the defense counsel had

received copies prior to the preliminary hearing. Defense counsel was given the opportunity to compare the notes and the two reports and found two differences: no quotation marks were used in the field notes while the handwritten and typewritten reports were punctuated as to statements attributed to the defendant; there was a realignment of the chronological sequence in the typewritten report as compared to the handwritten report. The trial court also reviewed and compared the notes and reports and, aside from the lack of quotation marks in the field notes, found no material difference. Additionally, the defendant extensively cross-examined the detective concerning the differences. The field notes contained statements made by the defendant during interrogation, such as, "we both stabbed him," however, without the quotation marks. The handwritten report and typewritten report contained that same statement, but with quotation marks. We find the statements in the field notes were included in the handwritten and typewritten reports, copies of which defense counsel had been provided prior to the preliminary hearing, and no prejudice resulted to the defendant.

Finally, the defendant argues the aiding and abetting instruction was "incorrect and/or misleading." The instruction given by the trial court is as follows with the italicized portion being what the trial court added to PIK Crim. 2d 54.05:

"*You are instructed that* a person who, either before or during its commission, intentionally aids *or assists* another to commit a crime with *the* intent to promote or assist in its commission is *thereby considered* criminally responsible for the crime ["committed" omitted] *as if that person directly committed each act necessary to the commission of the crime* regardless of the extent of the *person's* ["person's" substituted for PIK's use of "defendant's"] participation, if any, in the actual commission of the crime. *Mere presence, standing alone, is insufficient to find this association and participation.*"

Here, the defendant's defense was that he was a "mere bystander," a "shocked observer" of the stabbing and robbing of Carl Baldwin by Henry Johnson. The defendant argues there was no defense unless the jury clearly understood it is no crime to be associated with a person who commits a crime and it is no crime to be present at the scene of the crime.

First, the defendant argues the trial court's use of the word "person's" rather than "defendant's" in the instruction placed the jury's focus on Henry Johnson's participation in the crime rather than the defendant's. We disagree. In breaking down the

instruction, it reads as follows: "A person . . . is . . . criminally responsible . . . regardless of the extent of the person's participation." The use of the word "person" rather than "defendant" did not confuse the jury on whose participation was relevant. All of the instructions concerned the defendant's criminal liability and the "person" indicated in the instruction was the defendant.

Second, the defendant argues the language "if any" could lead the jury to understand that no conduct or participation was necessary on the part of the defendant to be held liable for the acts of Johnson. We disagree on this point, also. The language "if any" is the exact wording found in the PIK instruction. Additionally, in the context of the final sentence added by the trial court, the jury could not have understood the language "if any" to mean no conduct or participation was necessary by the defendant to find the defendant criminally liable.

Finally, the defendant argues the last sentence added by the trial court is misleading because of the use of the words "association and participation." In *State v. Burton*, 235 Kan. 472, 477, 681 P.2d 646 (1984), it was stated:

"It is the rule in this state that mere association with the principals who actually commit the crime or mere presence in the vicinity of the crime are themselves insufficient to establish guilt as an aider and abettor; however, when a person knowingly associates himself with the unlawful venture and participates in a way which indicates he willfully is furthering the success of the venture, such evidence of guilt is sufficient to go to the jury. [Citations omitted.]"

The final sentence goes directly to the defendant's defense that he was a mere bystander and is a correct statement of the law. The jury instruction given is not misleading.

The judgment of the lower court is affirmed.