IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 120,994

STATE OF KANSAS,
*Appellee*,

v.

PAUL GUEBARA,
*Appellant*.

SYLLABUS BY THE COURT

1.

Because Kansas' statutory possession-of-a-weapon ban applies to people who have committed only certain felonies, a stipulation to only a prior felony does not satisfy the prosecution's burden because it fails to establish that the defendant had committed a felony that prohibited the defendant from possessing a weapon on the date in question.

2.

When requested by a defendant charged with unlawful possession of a weapon, a district court must approve a stipulation that the defendant had committed a prior felony that prohibited the defendant from owning or possessing a weapon on the date in question.

3.

When a stipulation in a criminal-possession-of-a-weapon case is inadequate to establish that the defendant had committed a prior felony that prohibited the defendant from possessing a weapon on the date in question, appellate courts review under the constitutional harmless-error standard. In doing so, the appellate court may consider a

journal entry admitted into the record but withheld from the jury under the procedures governing prior-felony stipulations in criminal-possession cases.

Review of the judgment of the Court of Appeals in an unpublished opinion filed February 24, 2023. Appeal from Finney District Court; ROBERT J. FREDERICK, judge. Submitted without oral argument November 3, 2023. Opinion filed March 8, 2024. Judgment of the Court of Appeals affirming in part and reversing in part the district court is affirmed in part and reversed in part. Judgment of the district court is affirmed.

*Paul Guebara*, appellant pro se, was on the briefs.

*Brian R. Sherwood*, assistant county attorney, *Susan Lynn Hillier Richmeier*, county attorney, *Natalie Chalmers*, assistant solicitor general, *Derek Schmidt*, former attorney general, and *Kris W. Kobach*, attorney general, were on the briefs for appellee.

The opinion of the court was delivered by

WALL, J.: Kansas law prohibits people convicted of certain felonies from possessing a weapon for a statutorily prescribed period. K.S.A. 2022 Supp. 21-6304(a)(1)-(4), (d). To support a conviction under that statute, the State must (1) prove the defendant possessed a weapon; and (2) establish the defendant's status as a prohibited felon, meaning the defendant was convicted of a prior felony that made it unlawful to possess a weapon on the date in question.

Persons charged under that statute will often stipulate at trial to their prohibited status for fear that the details of the prior felony conviction would unfairly prejudice the jury against them. In this case, we consider how much detail that stipulation must include to establish the prohibited-status element of the offense.

2

Guebara was charged with attempted first-degree murder and criminal possession of a weapon by a felon for shooting a man in Garden City. At trial, Guebara stipulated that he had previously been convicted of "a felony crime" without further detail. A jury convicted him of both crimes, but a panel of the Court of Appeals reversed the criminal-possession conviction based on our decision in *State v. Valdez*, 316 Kan. 1, 20, 512 P.3d 1125 (2022). There, we determined that a generic stipulation like Guebara's failed to establish that a defendant had been convicted of one of the felonies that would prohibit him from possessing a weapon.

In a concurring opinion, Judge Malone argued that *Valdez* contradicts an earlier decision of our court, *State v. Lee*, 266 Kan. 804, 977 P.2d 263 (1999). *State v. Guebara*, No. 120,994, 2023 WL 2194542, at *23-24 (Kan. App. 2023) (unpublished opinion) (Malone, J., concurring). In *Lee*, our court required the district court to approve a defendant's stipulation that acknowledged "the defendant is, without further elaboration, a prior convicted felon." 266 Kan. 804, Syl. ¶ 4.

We disagree that our caselaw is inconsistent. Later decisions—particularly *State v. Mitchell*, 285 Kan. 1070, 179 P.3d 394 (2008)—flesh out our holding in *Lee*. Under those decisions, a stipulation to only a prior felony crime provides insufficient evidence for a criminal-possession conviction. Instead, because only certain felonies trigger the weapons ban, the stipulation must establish that the defendant had a prior felony that prohibited the defendant from possessing a weapon on the date in question. 285 Kan. 1070, Syl. ¶ 3, 1079. And consistent with that caselaw, we held in *Valdez* that the stipulation was inadequate because it established only that the defendant had been convicted of "a felony." *Valdez*, 316 Kan. at 19-20.

For the same reasons, Guebara's stipulation was inadequate. The district court also failed to secure a jury-trial waiver before accepting Guebara's stipulation, an omission we have recently deemed to be constitutional error. See *State v. Bentley*, 317 Kan. 222, Syl.

3

¶ 2, 526 P.3d 1060 (2023). Even so, those errors were harmless beyond a reasonable doubt. Guebara did not contest the prohibited-status element of his criminal-possession charge, and if he had, the State was prepared to present conclusive evidence of Guebara's prior conviction to the jury. Evidence establishing Guebara's prohibited-felon status was submitted to and accepted by the district court. But guided by our caselaw, the district court excluded it from the jury's view to avoid the risk of undue prejudice to Guebara.

Guebara, who—by his own choice—represented himself on appeal, has raised many other challenges. But we agree with the Court of Appeals panel that none warrant reversal of his convictions. The State also asked us to reverse a Confrontation Clause holding the panel made, but we decline to do so for prudential reasons. We therefore affirm Guebara's convictions.

FACTS AND PROCEDURAL BACKGROUND

A man was shot in Garden City, and he identified Guebara as the shooter. According to the victim, Guebara had followed him after an argument at a poker game and then shot the victim as he exited his truck. Officers who investigated the shooting eventually enlisted Guebara's daughter and her fiancé to record a series of conversations. In those conversations, Guebara's friends and family discussed how to get rid of the gun Guebara had used. Officers later recovered a stainless-steel .357 revolver that had been concealed in the living room chair of a close friend of Guebara's brother-in-law. The panel below described these facts in greater detail, but we need not restate them to resolve the issues before us. See *Guebara*, 2023 WL 2194542, at *1-5.

The State charged Guebara with one count of attempted first-degree murder and one count of criminal possession of a weapon by a felon. At that time, criminal possession of a weapon was codified at K.S.A. 2014 Supp. 21-6304. One way to violate that statute was by possessing a weapon after being convicted "within the preceding 10

4

years" of certain enumerated felonies. See K.S.A. 2014 Supp. 21-6304(a)(3)(A). The State alleged that Guebara had violated that provision because he had been released from prison within the past 10 years for first-degree murder, one of the enumerated felonies. See *State v. LaGrange*, 294 Kan. 623, Syl. ¶ 3, 279 P.3d 105 (2012) (10-year statutory weapons ban begins when offender is released from prison). He was convicted of that offense in 1983 and sentenced to life in prison. Our court affirmed his conviction. See *State v. Guebara*, 236 Kan. 791, 799, 696 P.2d 381 (1985). Guebara was later paroled.

Before trial, Guebara conveyed that he would stipulate to his prohibited status as a prior felon. The stipulation that Guebara and the State agreed to was admitted into evidence during Guebara's trial and later included in the jury instructions. It said that Guebara "had been released from prison for a felony crime" within the last 10 years:

"51.020. Stipulations and Admissions:
"The following facts have been agreed to by the parties and are to be considered by you as true:

"1. The defendant within 10 years preceding February 24, 2015, had been released from prison for a felony crime.
"2. The defendant was not found to be in possession of a firearm at the time of the prior crime, and has not had the prior conviction expunged or been pardoned for such crime."

Consistent with the procedures for stipulations in criminal-possession cases that we laid out in *Lee* and *Mitchell*, the State also introduced the certified journal entry of Guebara's 1983 murder conviction outside the jury's presence. See *Mitchell*, 285 Kan. at 1079; *Lee*, 266 Kan. at 815-16. The district court admitted the journal entry "for purposes of completing the record" but stated that it would not "be made available to the jury," which was "consistent with [the court's] understanding of what case law provides for and allows." But the court failed to follow one of the procedures set out in those cases—it did

5

not consult Guebara "outside the presence of the jury" to secure his "voluntary waiver of the right to have the State otherwise prove [the defendant's felon] status beyond a reasonable doubt to the jury." *Mitchell*, 285 Kan. at 1079 (citing *Lee*, 266 Kan. at 815-16).

At the end of a 7-day trial that included more than 100 exhibits and testimony from 23 witnesses, the jury found Guebara guilty as charged. A slew of posttrial motions were filed by Guebara's trial attorney, by a new attorney appointed by the court, and by Guebara himself—so many, in fact, that sentencing did not take place until three years after his conviction.

Two sets of those motions are relevant to the issues before us. First, Guebara and his new attorney filed motions for a new trial based on ineffective assistance of trial counsel. After a two-day evidentiary hearing, the district court denied the motion in a 63-page decision that scrutinized each of the many claims Guebara had made. Second, Guebara and his attorney filed motions for a new trial based on the State's disclosure that, starting about 14 months after the trial, the lead detective began a sexual relationship with Guebara's daughter, who had been a confidential informant in the investigation and a key witness at trial. Guebara believed the relationship had started during the investigation. The district court found that portions of two police files contained discoverable information and ordered they be provided to Guebara. At a hearing on the motion, the court said that once Guebara's attorney reviewed the second file, he could decide whether there was evidence to "get this motion off the ground to a point where you really want to pursue it." The attorney did not pursue the motion.

At sentencing, the district court imposed a controlling 586-month prison sentence for attempted first-degree murder. It imposed a concurrent eight-month prison sentence for criminal possession of a weapon. Guebara appealed to the Court of Appeals.

After a sequence of events discussed below, a motions panel of the Court of Appeals allowed Guebara to proceed pro se. As a result, Guebara prepared all the relevant appellate filings here without the help of an attorney. His brief raised many challenges.

After Guebara filed that brief, we decided *Valdez*. That case was largely about K.S.A. 2022 Supp. 21-5705's rebuttable intent-to-distribute presumption, but it also addressed whether a generic prior-felony stipulation like the one here was sufficient to support a criminal-possession conviction under the enumerated-felonies subsection. *Valdez*, 316 Kan. at 17-20. We determined that a generic stipulation was insufficient. Chief Judge Arnold-Burger—the presiding judge on the panel assigned to hear Guebara's appeal—ordered Guebara and the State to address *Valdez*. Guebara argued that the generic stipulation provided insufficient evidence; the State argued that the stipulation was sufficient under *Lee* and the United States Supreme Court's decision in *Old Chief v. United States*, 519 U.S. 172, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997).

In an opinion written by Chief Judge Arnold-Burger, the panel applied *Valdez* and reversed Guebara's criminal-possession conviction, but it otherwise rejected his challenges and affirmed his attempted first-degree-murder conviction. *Guebara*, 2023 WL 2194542, at *18-19, 23. The panel decided that resentencing was unnecessary because the 8-month criminal-possession sentence ran concurrent to Guebara's 586-month attempted-murder sentence. 2023 WL 2194542, at *19; see *Valdez*, 316 Kan. at 20 (remand for resentencing unnecessary when controlling sentence and applicable postrelease term not affected). Judge Malone wrote a concurrence acknowledging that *Valdez* controlled this appeal. But he wrote separately "to state [his] view that the holding in *Valdez* is misguided and conflicts with the Kansas Supreme Court's own precedent." 2023 WL 2194542, at *23 (Malone, J., concurring). In his view—which we expand on below—*Valdez* and *Lee* are irreconcilable, and he urged this court to resolve the conflict.

7

The State petitioned our court for review. It argued that we should affirm Guebara's conviction under *Old Chief* and *Lee*. And it asked us to reverse *Valdez* or at least clarify how it fits into the *Lee* framework. Guebara—who is still acting pro se—also petitioned for review, renewing many challenges he had raised in his appellate brief. Finally, the State also filed a conditional cross-petition for review. In that filing, the State argued that the panel was wrong to declare one of the trial witnesses "unavailable" under the Confrontation Clause of the Sixth Amendment to the United States Constitution.

We granted review of the three petitions and placed the case on the November 2023 summary-calendar docket. As a result, we decide this case based on the petitions for review and the briefs. See Supreme Court Rule 7.01(c)(4) (2023 Kan. S. Ct. R. at 42) ("When a case is placed on the summary calendar, it is deemed submitted to the court without oral argument unless a party's motion for oral argument is granted."). Jurisdiction is proper. See K.S.A. 60-2101(b) (providing for Kansas Supreme Court review of Court of Appeals decisions).

ANALYSIS

The principal issues here involve stipulations to prior felonies in criminal-possession-of-a-weapon cases, so we begin our discussion there. First, we explain how *Valdez* aligns with our caselaw. Then, we apply our caselaw to Guebara's stipulation. We agree with the Court of Appeals panel that Guebara's generic stipulation was inadequate. But we do not agree that Guebara's criminal-possession conviction should be reversed.

After resolving the issues related to the stipulation, we turn our attention to the many challenges Guebara raises in his pro se briefing. We agree with the panel that none of them warrant reversal of Guebara's convictions. Finally, we address the State's cross-petition and explain why prudential considerations support our decision not to reach the merits of the panel's Confrontation Clause holding.

8

I.    Valdez *Does Not Contradict Our Caselaw on Prior-Felony Stipulations in Criminal-Possession-of-Weapon Cases*

The State asks us to reverse the Court of Appeals panel and reinstate Guebara's criminal-possession conviction. In its view, Guebara's generic stipulation to "a felony crime" provides sufficient evidence to satisfy the prohibited-status element because *Lee* requires the parties to stipulate that the defendant is "a prior convicted felon" without "further elaboration" and without disclosing "the number and nature of the prior convictions." *Lee*, 266 Kan. 804, Syl. ¶ 4. Thus, the State argues we contradicted our earlier caselaw when we held in *Valdez* that a generic stipulation to "a felony" was inadequate. Judge Malone agreed in his concurring opinion. But we believe the State and Judge Malone's concurring opinion focus too narrowly on *Lee* without accounting for our court's later caselaw, especially *Mitchell*.

Stipulations are commonplace in criminal-possession-of-a-weapon cases because, otherwise, "the State would prove a defendant's [prohibited-felon] status by [introducing] court records showing a defendant's prior felony," and those records might include details that "run the risk of unfairly prejudicing the jury against the defendant based on his or her past crimes." *State v. Housworth*, No. 115,836, 2017 WL 2834502, at *15 (Kan. App. 2017) (unpublished opinion). As the United States Supreme Court has recognized, that risk of unfair prejudice is "especially obvious" when, as here, "a prior conviction was for a gun crime or one similar to other charges" in the case. *Old Chief*, 519 U.S. at 185. In fact, the Court has held that the risk of unfair prejudice is so acute that prosecutors are *required* to accept defendants' offers to stipulate to their prohibited-felon status in most cases. See 519 U.S. at 191-92. And our court adopted that same position in *Lee*. 266 Kan. at 815-16.

9

The controlling question in *Lee*, like *Old Chief*, was whether the prosecution's evidence establishing the defendant's prior felony was admissible under the rules of evidence, notwithstanding the defendant's offer to stipulate to his prohibited status as a convicted felon. The issue in *Lee* pitted K.S.A. 60-445, which allows a district court to exclude evidence that unfairly prejudices the jury, against the common-law rule entitling the prosecution "'to prove its case free from any defendant's option to stipulate the evidence away.'" 266 Kan. at 810. *Lee* recognized that both a defendant's stipulation and a copy of his prior felony conviction are equally probative of the defendant's prohibited-felon status under the criminal-possession statute, but only the former avoids the risk of undue prejudice to the defendant. Thus, *Lee* held that the district court abused its discretion by rejecting the defendant's offer to stipulate and allowing the State to introduce evidence of his prior felony conviction under K.S.A. 60-445. 266 Kan. at 813-15.

Owing to that limited focus, *Lee* did not closely address the adequacy of the stipulation—that issue was not before the court. Instead, it adopted procedures the Florida Supreme Court, following *Old Chief*, had laid out in *Brown v. State*, 719 So. 2d 882, 889 (Fla. 1998). Those procedures required a district court to (1) approve the defendant's requested stipulation, (2) allow the State to place the prior judgment and sentence into the record, (3) prevent the State from disclosing that information to the jury, (4) obtain a voluntary waiver of the defendant's right to have the State prove the prohibited-status element beyond a reasonable doubt to the jury, (5) recognize that the stipulation satisfied the prosecution's burden of proof for the prohibited-status element, and (6) instruct the jury that it may consider the prohibited-status element proven by agreement of the parties. *Lee*, 266 Kan. 804, Syl. ¶ 4. But *Lee* adopted those procedures without addressing the differences between the Kansas criminal-possession statute and the comparable Florida and federal statutes.

10

Those differences are crucial when considering the adequacy of the stipulation. The federal criminal-possession statute at issue in *Old Chief* prohibited (with limited exceptions) possession of a firearm by any person convicted of "'a crime punishable by imprisonment for a term exceeding one year.'" *Old Chief*, 519 U.S. at 174 (quoting 18 U.S.C. § 922[g][1]). And the Florida statute prohibited possession by a person "[c]onvicted of a felony." Fla. Stat. § 790.23(1)(a) (1995). But the relevant section of the Kansas statute was narrower, prohibiting possession by a person convicted of only certain felonies. K.S.A. 21-4204(a)(4)(A) (Furse). So while a stipulation to "a felony crime" would have been sufficient to establish that the defendant was prohibited from possessing a weapon under the federal or Florida statutes, the holdings from *Old Chief* and *Brown* did not map neatly onto Kansas law.

But nine years after *Lee*, our court decided *Mitchell*. There, we held that the prosecution's burden of proof is satisfied when the defendant stipulates that a prior conviction "prohibited [the defendant] from owning or possessing a firearm on the date in question." *Mitchell*, 285 Kan. at 1079. Although our court did not expressly depart from *Lee*, that language makes clear the stipulations under the Kansas criminal-possession statute must be to something more than "a felony crime." That is, because only certain felonies trigger the Kansas statute, the stipulation must establish that the defendant has committed a prior felony *that prohibited them from possessing a weapon on the date in question*. Without that extra detail, a jury cannot conclude beyond a reasonable doubt that the State had proved the prohibited-status element of the criminal-possession charge.

And since then, the stipulations in many of the criminal-possession cases we have heard have included language in line with *Mitchell*. See, e.g., *State v. Johnson*, 310 Kan. 909, 910, 453 P.3d 281 (2019) (stipulation provided that prior juvenile adjudication "'prohibited him from owning and possessing a firearm on October 14, 2013'"); *State v. Sims*, 308 Kan. 1488, 1495, 431 P.3d 288 (2018) (The defendant stipulated that he was "'convicted of a felony offense . . . within the ten years preceding'" and that he "'was

11

prohibited [] from owning or possessing a firearm on June 9, 2013.'"); *State v. Logsdon*, 304 Kan. 3, 14, 371 P.3d 836 (2016) ("The parties stipulated Logsdon was a felon and was prohibited from possessing a firearm."); *State v. Burnett*, 300 Kan. 419, 444, 329 P.3d 1169 (2014) ("[H]e was released from prison for a felony, which prohibited him from lawfully possessing a firearm on July 7—a fact that he stipulated to and was an essential element of the crime of criminal possession of a firearm charged in this case."); *State v. Dobbs*, 297 Kan. 1225, 1231, 308 P.3d 1258 (2013) ("Dobbs stipulated he had a prior felony conviction and was prohibited from possessing a firearm on the date of the shooting.").

Then in *Valdez*, we concluded that insufficient evidence supported a criminal-possession conviction because the stipulation said only that the defendant had committed "'a felony,'" and thus "there is no factual basis or inference to convince us the jury could have found the essential—yet missing—element from what it was given." 316 Kan. at 20. That holding tracks *Mitchell*. Because Kansas' possession-of-a-weapon ban applies to people who have committed only certain felonies, the generic stipulation in *Valdez* to "a felony" did not satisfy the prosecution's burden because it failed to establish that the defendant was prohibited from possessing a firearm on the date in question. So we disagree that *Valdez* deviates from our earlier caselaw.

Of course, we acknowledge that we did not explain these nuances in *Valdez*. And as Judge Malone pointed out, *Valdez* included language inconsistent with *Lee*. *Guebara*, 2023 WL 2194542, at *24 (Malone, J., concurring). For example, *Valdez* faulted the district court for not instructing the jury "what [the defendant's] prior crime was" and for withholding the certified journal entry of the defendant's prior conviction from the jury. *Valdez*, 316 Kan. at 19-20. In *Lee*, however, our court had said that "[n]either [those] documents nor the number and nature of the prior convictions should be disclosed to the trial jury." *Lee*, 266 Kan. at 815-16. Despite those passing comments, the essential holding in *Valdez* is that a generic stipulation to a prior felony provides insufficient

12

evidence to support a conviction under the Kansas criminal-possession statute because only certain felonies trigger the weapons ban. Even so, we recognize that our failure to spell all this out has generated uncertainty about the law governing prior-felony stipulations in criminal-possession cases. We have endeavored to resolve that uncertainty here.

Finally, before applying this framework to Guebara's trial proceedings, it is useful to address the procedures for prior-felony stipulations, which our court adopted in *Lee* and largely reiterated in *Mitchell*. See *Mitchell*, 285 Kan. at 1079. We are inclined to address those procedures here because they, too, have generated some confusion. For example, a Court of Appeals panel has questioned whether they amount to only "'best practices.'" *State v. Brooks*, No. 113,636, 2017 WL 839793, at *10 (Kan. App. 2017) (unpublished opinion). And during the trial proceedings here, the attorneys and district court appeared unsure of the applicable procedures and controlling law. As a result, we wish to emphasize three points.

First, when requested by a defendant charged with unlawful possession of a weapon, a district court must approve a stipulation that the defendant had committed a prior offense that prohibited the defendant from owning or possessing a weapon on the date in question. See *Mitchell*, 285 Kan. at 1079. That stipulation is evidence that satisfies the prosecution's burden of proving the prohibited-status element of the criminal-possession charge. See *Old Chief*, 519 U.S. at 186 (a defendant's "proffered admission would, in fact, [be] not merely relevant but seemingly conclusive evidence of the element"). The district court should instruct the jury that it can consider that fact proven by agreement of the parties and ensure that the nature and number of the prior felonies is not otherwise disclosed to the jury.

Second, the district court must obtain a jury-trial waiver before accepting a "prohibited-felon" stipulation in a criminal-possession case. Arguably, *Lee* and *Mitchell* already required that, since those cases instructed the district court to consult the defendant "outside the presence of the jury" to secure "his voluntary waiver of the right to have the State otherwise prove his [prohibited-felon] status beyond a reasonable doubt to the jury." *Mitchell*, 285 Kan. at 1079 (citing *Lee*, 266 Kan. at 815-16). But even if our court were insufficiently clear in those cases, we expressly held in *Johnson* that a stipulation to the prohibited-status element of a criminal-possession charge requires a jury-trial waiver. 310 Kan. at 918-19.

And third, the State *may*, but is not required to, submit a certified journal entry of the prior felony outside the presence of the jury. See *Lee*, 266 Kan. 804, Syl. ¶ 4 ("[T]he State may place into the record, at its discretion, the actual judgment(s) and sentence(s) of the prior felony conviction(s)."). The purpose of that document is not to furnish the jury with evidence establishing the prior-felony element; as we have said above, the stipulation itself provides sufficient evidence. Instead, the journal entry protects the State's legitimate interest in developing a record for appeal that, in the event of errors, would allow the State to argue that it was prepared to put forth conclusive evidence of the defendant's status as a prohibited felon had the defendant contested that element. See *Mitchell*, 285 Kan. at 1077 (*Lee* "specifically requires the district court to admit the actual judgment(s) and sentence(s) of the prior felony conviction(s) into the record without disclosing them to the jury, thereby protecting the State's interest in proving all of the elements of the defendant's status.").

With this framework in mind, we now consider whether the trial proceedings involving Guebara's stipulation involved any errors and, if so, whether reversal is warranted.

14

II. *Guebara's Prior-Felony Stipulation Was Inadequate, and the District Court Failed to Obtain a Jury-Trial Waiver Before Accepting the Stipulation, but Those Errors Are Harmless Beyond a Reasonable Doubt*

Guebara stipulated that within the previous 10 years, he had been "released from prison for a felony crime." Based on the framework we just outlined, Guebara's generic stipulation was inadequate because it failed to establish that he had been convicted of a felony that would have prohibited him from owning or possessing a weapon on the day of the shooting. But there was another error. As Guebara points out—and as the State concedes—the district court failed to obtain a jury-trial waiver before accepting his stipulation. As we held in *Johnson*, that waiver is required when a defendant stipulates to an element of a crime because "the defendant has effectively given up" his or her federal constitutional right to a jury trial on that element. 310 Kan. at 918-19.

The district court's failure to obtain a jury-trial waiver does not require reversal. In *Bentley*, we decided that such an error was not "structural" (which would require automatic reversal of the conviction) but was instead a constitutional error that appellate courts should review under the constitutional harmless-error standard. *Bentley*, 317 Kan. at 233-34. We determined that courts should conduct that harmless-error analysis "through a more focused lens" and decide whether there is a "reasonable possibility" that the failure to inform the defendant "of his right to jury trial led to his decision to enter the stipulation." 317 Kan. at 234. We conclude that Guebara would have offered a stipulation even if the court had advised him of his right to a jury trial on the element. The State was prepared to present conclusive evidence of Guebara's prior murder conviction that prohibited him from possessing a firearm on the date in question, and he would have had no defense if the State had offered this evidence to the jury. Nor is there any suggestion that Guebara meant to defend his case on that ground.

15

But what about the inadequate stipulation? When "an appellate court holds that evidence to support a conviction is insufficient as a matter of law, the conviction must be reversed." *State v. Scott*, 285 Kan. 366, Syl. ¶ 2, 171 P.3d 639 (2007). And in *Valdez*, we held that a stipulation to "a felony" provided insufficient evidence for a conviction under the Kansas criminal-possession statute, so we reversed the defendant's conviction. 316 Kan. at 20. The Court of Appeals panel here followed suit, reversing Guebara's conviction.

In *Valdez*, however, the State had not addressed the proper remedy for a stipulation error. And there was no indication from the record on appeal that the State had offered a journal entry, outside the presence of the jury, establishing Valdez' prohibited-felon status. *Valdez*, 316 Kan. at 19 (if the district court received evidence of Valdez' prohibited-felon status, "it is not in the appellate record"). But here, the State argues that the stipulation errors are harmless and the record includes a journal entry confirming Guebara's prohibited-felon status.

We are persuaded that this is not a typical sufficiency-of-the-evidence situation. A conviction based on insufficient evidence violates a defendant's due-process rights under the Fourteenth Amendment to the United States Constitution. *State v. Switzer*, 244 Kan. 449, 450, 769 P.2d 645 (1989). As the United States Supreme Court has explained, "an appellate reversal" for insufficient proof at trial "means that the government's case was so lacking that it should not have even been *submitted* to the jury." *Burks v. United States*, 437 U.S. 1, 16, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978). And in that case, the prosecution has no grounds to complain, "for it has been given one fair opportunity to offer whatever proof it could assemble." 437 U.S. at 16.

By contrast, the State *did* assemble conclusive proof of Guebara's prior conviction for first-degree murder, which establishes Guebara's prohibited-felon status. The State was prepared at trial to call Guebara's parole officer, who had testified at his preliminary

hearing. The parole officer would have testified to Guebara's prohibited-felon status but for Guebara's offer to stipulate. And the State submitted the certified journal entry of the conviction into evidence outside the presence of the jury, a procedure our court expressly contemplated in *Lee* and *Mitchell*. See *Mitchell*, 285 Kan. at 1077; *Lee*, 266 Kan. 804, Syl. ¶ 4. In fact, the only thing stopping that evidence from reaching the jury was Guebara's offer to stipulate to the prior conviction rather than contest it. See *Lee*, 266 Kan. at 815 (evidence of the "type and nature of the prior crime" may be admitted when the defendant disputes the status of the prior conviction). We need not turn a blind eye to these facts and conclude that the evidence here was so lacking that the charge should not have even been submitted to the jury. As a result, although the stipulation was inadequate, we believe the procedures for prior-felony stipulation in criminal-possession-of-a-weapon cases are unsuited for a standard sufficiency-of-the-evidence analysis.

Instead, the circumstances here are more "akin to a court's failure to submit an element of the charged crime to the jury," which we discussed in *Bentley*. 317 Kan. at 233-34. As we recognized there, a constitutional harmless-error standard is appropriate when the trial court "fails to secure a verdict on *some* elements of the crime, rather than all of them" and the element "was not contested by the defendant and would not be contested if the conviction were vacated and a new trial ordered." 317 Kan. at 233 (citing *Neder v. United States*, 527 U.S. 1, 7, 119 S. Ct. 1827, 144 L. Ed. 2d 35 [1999]). Here, although the inadequate stipulation prevented the jury from finding Guebara guilty beyond a reasonable doubt on one element of the criminal-possession charge, there was adequate evidence supporting the remaining elements. And as we have emphasized, Guebara did not contest his prior felony. Moreover, the stipulation procedures adopted in *Lee* and *Mitchell* seemingly contemplate appellate review for harmlessness. Under those procedures, the State may introduce the journal entry of the prior conviction "into the record [but outside the presence of the jury], thereby protecting the State's interest in proving all of the elements of the defendant's status." *Mitchell*, 285 Kan. at 1077.

17

A constitutional error is harmless only if the party benefitting from the error demonstrates "beyond a reasonable doubt the error will not or did not affect the trial's outcome in light of the entire record, *i.e.,* when there is no reasonable possibility the error contributed to the verdict." *State v. Corey*, 304 Kan. 721, 731-32, 374 P.3d 654 (2016). In our view, the State has met that standard. The language of the stipulation was inadequate to establish that Guebara had committed a prior felony that prohibited him from possessing a weapon on the day of the shooting in Garden City. But had there been no faulty stipulation (e.g., if Guebara had contested his prior conviction), the record shows beyond a reasonable doubt that the State would easily have proved that element at trial through the journal entry included in our record. And unlike *Valdez*, here, the State has included the journal entry establishing Guebara's prohibited-felon status in the record on appeal. This demonstrates that the stipulation error was harmless.

Having concluded that both stipulation errors were harmless beyond a reasonable doubt, we reverse the panel's decision vacating Guebara's conviction for criminal possession of a weapon and affirm the judgment of the trial court.

III. *The Other Issues Raised by Guebara and the State Do Not Warrant Reversal*

Guebara's petition for review raises many issues he raised in the Court of Appeals. He argues that his trial counsel was constitutionally ineffective. He argues that the prosecutor erred during closing argument by misdescribing the evidence. He argues that the district court improperly allowed hearsay evidence. He argues that the State failed to disclose exculpatory evidence. He argues that his right to appellate counsel has been violated. And he argues that cumulative error denied him the right to a fair trial. The State also raises another issue. In its view, the panel erred by concluding that one of the trial witnesses was "unavailable" for Confrontation Clause purposes based on his limited testimony and frequent failure to recall information.

18

Because we conclude that Guebara has either inadequately briefed or abandoned several issues, we begin by addressing his right-to-appellate-counsel claim. Had he been denied that right, he could hardly be blamed for those deficiencies. But as we explain below, the reason Guebara is acting pro se is that he chose that path after the Court of Appeals reasonably denied his motion for a third appellate attorney. We then address the remaining issues raised by the parties and conclude that none of those challenges warrant reversal of the panel's decision.

A. *Guebara's Right to Appellate Counsel Was Not Violated, and the Court of Appeals Did Not Abuse Its Discretion by Denying Guebara's Motion for a Third Appellate Attorney*

In his petition for review, Guebara argues that the Court of Appeals denied him appellate counsel. The Appellate Defender's Office was at first appointed to represent Guebara. The appellate defender filed a brief, but Guebara was unhappy with the arguments that attorney made, so he moved for substitute counsel. Neither the State nor the appointed attorney responded. "In the absence of a response," the motions panel of the Court of Appeals granted Guebara's motion. The panel struck the appellate defender's brief, and the Finney County District Court appointed a private-practice attorney.

Guebara's dissatisfaction persisted. He filed another motion to remove appellate counsel, this time asserting that his attorney refused to make the arguments that he wanted her to. The motions panel denied that request, concluding that Guebara had not shown "justifiable dissatisfaction." See *State v. Pfannenstiel*, 302 Kan. 747, Syl. ¶ 3, 357 P.3d 877 (2015) ("A defendant who files a motion for new counsel must show justifiable dissatisfaction with his or her appointed counsel."). The panel said that it would not appoint a third attorney and that Guebara could proceed pro se or retain private counsel if he could not work with his attorney. Guebara filed a second motion to remove this attorney. The panel again denied Guebara's request, reiterating that he could proceed pro se or retain private counsel. In response to one of those motions, the appointed attorney

19

said that she was willing and able to continue representing Guebara. Guebara filed a third request, saying that he wanted different counsel but that he accepted the panel's condition to proceed pro se "under sever[e] duress." The panel granted Guebara's motion to remove his counsel.

Although his arguments are not fully delineated, it appears that Guebara is raising two distinct arguments. See *State v. Richardson*, 314 Kan. 132, Syl. ¶ 4, 494 P.3d 1280 (2021) (pro se pleadings must be liberally construed to give effect to the document's content). First, he appears to argue that the panel violated his federal equal-protection rights under *Douglas v. California*, 372 U.S. 353, 354-55, 83 S. Ct. 814, 9 L. Ed. 2d 811 (1963), by denying him the help of appellate counsel only because he is indigent. Second, he appears to argue that the Court of Appeals erred by failing to appoint him substitute counsel. Neither argument is convincing.

*Douglas* involved a challenge to a California criminal-procedure rule about an indigent appellant's right to appellate counsel. Under that rule, an indigent appellant was entitled to appellate counsel only if the appellate court conducted "'an independent investigation of the record'" and concluded that appellate counsel "'would be helpful to the defendant or the court.'" 372 U.S. at 355 (quoting *People v. Hyde*, 51 Cal. 2d 152, 154, 331 P.2d 42 [1958]). The United States Supreme Court held that California's scheme violated the Equal Protection Clause of the Fourteenth Amendment by discriminating based on indigency, and it determined that states must provide counsel to indigent defendants on their first appeal. 372 U.S. at 353-58.

*Douglas* is inapplicable here. The record in *Douglas* showed that the appellants had requested and were denied counsel, leaving them no choice but to proceed pro se. But Guebara was twice appointed appellate counsel, so there is no equal-protection violation under *Douglas*.

20

As for Guebara's second argument, a defendant has no right to be represented by a particular lawyer. See *State v. Brown*, 305 Kan. 413, 424, 382 P.3d 852 (2016). "Only if the defendant demonstrates justifiable dissatisfaction with his or her current counsel does the Sixth Amendment require a court to appoint new counsel." 305 Kan. at 424. A defendant can show "justifiable dissatisfaction" through "a conflict of interest, an irreconcilable disagreement, or a complete breakdown in communication." 305 Kan. at 424-25.

Like he did in the Court of Appeals, Guebara argues only that his appointed counsel would not raise the issues he wanted her to and that "it's [his] appeal not appellate counsel[']s." The panel found that he had not shown "justifiable dissatisfaction," a finding that we review for abuse of discretion. See 305 Kan. at 423-28. The panel did not abuse its discretion. As we have recognized, appellate counsel, not the defendant, is responsible for determining which claims to raise on appeal:

> "In an appeal from a criminal conviction, appellate counsel should carefully consider the issues, and those that are weak or without merit, as well as those which could result in nothing more than harmless error, should not be included as issues on appeal. Likewise, the fact that the defendant requests such an issue or issues to be raised does not require appellate counsel to include them. Conscientious counsel should only raise issues on appeal which, in the exercise of reasonable professional judgment, have merit." *Baker v. State*, 243 Kan. 1, 10, 755 P.2d 493 (1988).

Guebara is not acting pro se in the appellate courts because he was denied the help of appellate counsel—he was appointed appellate counsel who asserted that she was willing and able to represent him. Instead, he is proceeding pro se because he disagreed with appellate counsel's strategy. But he has not shown that he was "justifiably dissatisfied" with the attorney. Nor has he asserted that appellate counsel provided constitutionally ineffective assistance.

21

B. *The District Court Did Not Err by Denying Guebara's Ineffective-Assistance-of-Counsel Claims*

Guebara next argues that the district court erred when it denied his motions for a new trial based on ineffective assistance of trial counsel. Ineffective-assistance-of-counsel claims are analyzed under the two-prong test set out in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and adopted by this court in *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985). Under the first prong, a defendant must establish deficient performance by showing that defense counsel's representation fell below an objective standard of reasonableness. *Khalil-Alsalaami v. State*, 313 Kan. 472, 485-86, 486 P.3d 1216 (2021). As the panel noted, "[j]udicial scrutiny of counsel's performance . . . must be highly deferential." *Guebara*, 2023 WL 2194542, at *7 (citing *Khalil-Alsalaami*, 313 Kan. at 485). Under the second prong, the defendant must establish prejudice by showing "with reasonable probability that the deficient performance affected the outcome of the proceedings, based on the totality of the evidence." 313 Kan. at 486.

The district court conducted a 2-day evidentiary hearing on Guebara's motions and then denied relief in a 63-page decision that scrutinized the many claims Guebara had raised. When a district court conducts an evidentiary hearing on an ineffective-assistance-of-counsel claim, appellate courts review the district court's factual findings for substantial competent evidence. The appellate court's review of the district court's legal conclusions is unlimited. 313 Kan. at 486.

In the district court, Guebara alleged that his trial counsel, Douglas Spencer, was ineffective in 20 ways. The decision of the panel below shows that Guebara raised nine ineffective-assistance allegations in that court. But even liberally construed, Guebara's petition for review has significantly narrowed the issues. See Supreme Court Rule 8.03(i)(1) (2023 Kan. S. Ct. R. at 59) ("[T]he issues before the Supreme Court include all

22

issues properly before the Court of Appeals that the petition for review . . . allege[s] were decided erroneously."). He alleges that Spencer was ineffective for failing to conduct a thorough investigation and to prepare for the case, for failing to object when the stainless-steel revolver found in the armchair was presented to the jury, and for allowing false testimony from Nathan Cook (the fiancé of Guebara's daughter).

1. *The District Court's Finding That Spencer Did Not Fail to Investigate or Prepare for the Case Is Supported by Substantial Competent Evidence*

Like the district court, the Court of Appeals panel carefully analyzed Guebara's argument, and it concluded that the district court's factual findings were supported by substantial competent evidence:

"A major recurring point in Guebara's argument below and on appeal is that Spencer failed to investigate the case and interview witnesses. Had he done this, Guebara claims, Spencer would have been able to better cross-examine the witnesses, lodge more appropriate objections, and preserve Guebara's confrontation rights under the Sixth Amendment.

"Although Guebara claims that the district court did not make findings about whether Spencer effectively investigated the case and interviewed witnesses this claim conflicts with the record. Guebara did not testify or provide an alibi witness, so the case was wholly based on what the State knew and how they knew it. From reviewing Spencer's cross-examination and the evidence he presented, the district court found it evident that Spencer spent a proper amount of time with Guebara, the investigative reports prepared in the case, and the audio recordings the State presented at trial. The court then noted numerous ways in which Spencer 'mudd[ied] the waters of the State's case.'

"The district court's factual findings on this point are supported by substantial competent evidence. Spencer testified about the steps he took before the trial to investigate and prepare for the case. Most of his preparation involved reviewing the

23

extensive paper discovery and audio recordings from the State. He provided the discovery to Guebara and met with Guebara several times to talk about the discovery and evidence in this case. Spencer subpoenaed all important witnesses. He also sought to interview Rios and Fajardo before trial. Though he did not succeed, the district court correctly noted that the State was building its case around the materials disclosed in discovery, not around what the witnesses may state in their testimony." *Guebara*, 2023 WL 2194542, at *7.

After reviewing the record on appeal, we agree with the Court of Appeals panel and adopt its analysis.

> 2. *Spencer Was Not Ineffective for Failing to Object When the Stainless-Steel Gun Was Presented to the Jury and for Failing to Object to Cook's "Perjured" Testimony*

Guebara first argues that Spencer should have objected when the stainless-steel gun recovered from Randy Miller's (a friend of Guebara's brother-in-law) house was shown to the jury during Miller's testimony. The panel acknowledged that the district court failed to rule on this issue. 2023 WL 2194542, at *8. But the panel held that "[t]here was ample evidence to support the relevance of the stainless-steel gun" at trial and that, despite having "no basis for objecting" to the gun, Spencer "was able to effectively point out" facts about its limited evidentiary value:

> "There was ample evidence to support the relevance of the stainless-steel gun to Guebara's charges of attempted first-degree murder and criminal possession of a weapon by a convicted felon. [The victim] identified Guebara as the shooter. Andrade heard Guebara on the phone with Fajardo just before Guebara was arrested describing where he put the gun. When Andrade told Silvia Cordes, she found it in the location described. Silvia Cordes gave the gun to Scott who brought it to Miller where it was found by the police.

24

"Spencer had no basis for objecting to the evidence presented about the stainless-steel gun. Even so, he was able to effectively point out problems to the jury with the State's evidence. For example, he elicited testimony from Officer Smith that Cook could have planted the gun and shell casings when they first went out to search for the gun. During closing, Spencer highlighted Silvia Cordes' contradictory testimony at trial—which was the only testimony given under oath—that she got the gun from her [uncle], not a woodpile. And he noted that none of the forensic evidence tied the stainless-steel revolver to the shooting or to Guebara." 2023 WL 2194542, at *8.

Guebara does not explain how the panel's analysis was incorrect. He does not offer a basis for an objection other than to assert the gun was "tainted evidence" and that it had been planted. Guebara has failed to establish that Spencer's representation in this regard was objectively unreasonable.

Guebara then argues that Spencer should have objected to the testimony of Nathan Cook, who was the fiancé of Guebara's daughter and who, along with Guebara's daughter, worked as a confidential informant in the case. Guebara does not explain the basis for an objection except to say that Cook committed perjury because it was Cook who planted the gun to frame Guebara. Guebara points to no evidence Cook was lying except to point out that Cook testified he had been wearing a t-shirt and jeans while the relevant police report states he was "wearing a tan canvas coat." And in any event, as the panel noted, Spencer "elicited testimony from Officer Smith that Cook could have planted the gun and shell casings when they first went out to search for the gun" and otherwise challenged the weight the jury should give the evidence about the gun. 2023 WL 2194542, at *8. We see no deficient performance in this regard.

C. *The State Did Not Commit Prosecutorial Error During Closing Argument*

Guebara next argues that the State erred during closing argument when discussing the elements of premeditation and intent. The prosecutor argued that the evidence showed

Guebara had been jealous of the victim, had gotten somebody to buy ammo for him the day of the shooting, had flashed his lights at the victim to get him to pull over, and had fired five bullets at the victim. The prosecutor also asserted that there was evidence that, on the day of the shooting, "'he was thinking, I want to kill somebody today'":

> "We've got this evidence—we also have evidence that we've presented to you from [his daughter] that he was thinking, [']I want to kill somebody today.['] He wanted Silvia to go get some ammo on the date before this happened—on the day that it happened. She didn't do it because she didn't want to. She didn't feel comfortable with it so she didn't do it."

At trial, Guebara's daughter had testified that on the morning of the shooting, her father had said he "needed some bullets for his new gun" and "felt like killing somebody":

> "Q. And did you later have a conversation with your father that kind of alarmed you?
> "A. At the house?
> "Q. Yes.
> "A. Yes.
> "Q. What statements did your father make to you that caused you alarm?
> "A. He said that he needed some bullets for his new gun.
> "Q. I'm going to stop you there. You said his new gun. Did he already have a gun?
> "A. He said that he had a 1911.
> "Q. And did he tell you anything that he had done with that 1911?
> "A. He said he traded it for a .357.
> "Q. Did he give you any more information than that?
> "A. No.
> "Q. What—let's go back to what he talked about, the bullets. Can you tell the jury about that?
> "A. Um, he said he felt like killing somebody.
> "Q. Did you agree to buy him ammunition that day?
> "A. No, ma'am."

26

According to Guebara, the prosecutor misstated the evidence because his daughter did not testify that he felt like killing somebody "today." Although Guebara alleged several other closing-argument errors to the Court of Appeals, this is the only one he renewed in his petition for review. See Rule 8.03(i)(1) (2023 Kan. S. Ct. R. at 59) ("[T]he issues before the Supreme Court include all issues properly before the Court of Appeals that the petition for review . . . allege[s] were decided erroneously.").

Guebara's trial counsel did not object to the alleged errors at trial, but appellate courts will review a claim of prosecutorial error even without a timely objection. *State v. Shields*, 315 Kan. 814, 835, 511 P.3d 931 (2022). Appellate courts apply a two-step analysis when evaluating such claims. First, they "'decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial.'" 315 Kan. at 835-36. Then, if the appellate court finds error, it reviews under the constitutional harmless-error standard, which we discussed above. Under that standard, the State must show that "'there is no reasonable possibility that the error contributed to the verdict.'" 315 Kan. at 836.

Because there was an evidentiary foundation for the prosecutor's factual inference, there was no error. See *State v. Watson*, 313 Kan. 170, 179, 484 P.3d 877 (2021) ("[A] prosecutor errs by arguing a fact or factual inference with no evidentiary foundation."). As the panel below noted, based on his daughter's testimony, "it can be reasonably inferred that Guebara was describing a present state of mind, meaning one that he had that day. So the way the prosecutor phrased the testimony was not a stretch from the record." *Guebara*, 2023 WL 2194542, at *20.

D.  *Guebara Has Inadequately Briefed His Allegation That the District Court Abused Its Discretion by Allowing Hearsay Testimony*

Next, Guebara argues that the district court erred by allowing hearsay testimony. Guebara does not specify the witness testimony he is objecting to, but he is likely renewing his argument made to the Court of Appeals that the district court improperly allowed hearsay statements from Silvia Cordes (Guebara's sister), Silvia Gillespie (Guebara's daughter), Cook, and Gabriel Andrade (the boyfriend of Guebara's aunt). Guebara seems to argue that the district court erred by allowing those statements under K.S.A. 2022 Supp. 60-460(d) without making the findings necessary under that subsection.

But Guebara has not identified the specific statements he is objecting to. When a party "fails to identify the specific statements" in a hearsay challenge, "[w]e will not speculate as to the statements [the defendant] seeks to challenge." *State v. Robinson*, 293 Kan. 1002, 1027, 270 P.3d 1183 (2012). As a Court of Appeals panel recently put it, "without more specific guidance on which portions of [the] testimony were allegedly hearsay, this court cannot even begin to engage in a proper analysis of whether the court improperly admitted hearsay evidence." *In re K.L.*, No. 124,873, 2022 WL 4391222, at *7 (Kan. App. 2022) (unpublished opinion). Nor does Guebara identify where in the record his attorney objected to statements made by those witnesses on hearsay grounds. See *State v. Mays*, 277 Kan. 359, 384-85, 85 P.3d 1208 (2004) (to preserve hearsay challenge for appeal, the defendant must make contemporaneous objection to complained-about evidence). To the contrary, Guebara alleged in the Court of Appeals that his trial counsel had been constitutionally ineffective for *failing* to object to hearsay statements made by these witnesses. *Guebara*, 2023 WL 2194542, at *15. Guebara is not entitled to relief on this issue.

28

E. *There Is No Evidence that the State Failed to Disclose Exculpatory Evidence*

Guebara next argues that the State failed to disclose exculpatory evidence. After Guebara was convicted, his attorney filed a motion for a new trial based on a *Brady/Giglio* disclosure by the State. See *State v. Robinson*, 309 Kan. 159, 160, 432 P.3d 75 (2019) ("[U]nder *Brady v. Maryland* . . . and *Giglio v. United States* . . . the State has a continuing duty to disclose evidence favorable to the defense, even after conviction."). The State had informed Guebara's attorney that the lead detective had been in a sexual relationship with Guebara's daughter—who had been a confidential informant in the investigation and a key witness in the trial—between April or May 2017 (about 14 months after the trial) and August 2018. The motion said that Guebara believed the relationship may have started during the investigation. Guebara also filed several pro se motions on the issue.

After an in-camera review, the district court found portions of two Garden City Police Department files contained discoverable information and ordered that the information be provided to Guebara. When the court took up the motion at the beginning of the sentencing hearing, Guebara's attorney had not yet received the second file, so he was not ready to go forward on the motion. But he said that he did not yet have an evidentiary basis to proceed on the claim that the detective and Guebara's daughter began their relationship earlier than the State reported. The district court said that once the attorney reviewed the second file, he could decide whether there was evidence to "get this motion off the ground to a point where you really want to pursue it." Guebara's counsel did not pursue the motion.

As the panel correctly concluded, "Guebara never moved for new trial" on this basis, and he "presented no evidence to support his claims. His conclusory assertion that the State withheld evidence fails because it is not supported by the record." *Guebara*,

29

2023 WL 2194542, at *22. Guebara has not remedied that deficiency in our court. He simply says the dates had not yet been solidified, but he points to no evidence that the relationship had started before or during the investigation.

F.  *Cumulative Error Did Not Deprive Guebara of a Fair Trial*

In the analysis above, we concluded that two stipulation errors occurred:  the district court failed to obtain a jury-trial waiver before accepting Guebara's stipulation to an element, and the stipulation did not establish that Guebara had committed a felony that prohibited him from possessing a weapon on the day of the shooting. We analyzed both errors under the constitutional harmless-error standard, and we determined that neither warranted reversal individually. For his last argument, Guebara contends that the errors in the district court collectively require reversal, even if individually they do not.

The cumulative effect of trial errors may require reversal of a defendant's conviction when the totality of the circumstances establish that the defendant was substantially prejudiced by the errors and denied a fair trial. *State v. Hirsh*, 310 Kan. 321, 345, 446 P.3d 472 (2019). In assessing the cumulative effect of errors during the trial, appellate courts examine the errors in the context of the entire record, considering how the trial judge dealt with the errors as they arose; the nature and number of errors and their interrelationship, if any; and the overall strength of the evidence. 310 Kan. at 345-46. If any of the errors being aggregated are constitutional, their cumulative effect must be harmless beyond a reasonable doubt. *State v. Robinson*, 306 Kan. 1012, 1034, 399 P.3d 194 (2017).

As we emphasized when discussing harmlessness for the errors individually, Guebara stipulated to his prior felony because he knew that the State had conclusive evidence to establish that element, and he did not want the jury in his trial for attempted first-degree murder and criminal possession of a weapon to learn that he had previously

been convicted of first-degree murder for shooting his wife. Guebara's offer to stipulate prevented the State from presenting that evidence to the jury, but the journal entry of the conviction was still placed into the record outside the jury's presence. See *Mitchell*, 285 Kan. at 1079. And if Guebara had instead contested the prior felony, there is no question that the State could have presented that journal entry to the jury and easily proved Guebara's status as a prohibited felon. So even when the two stipulation errors are considered together, we conclude beyond a reasonable doubt that there is no reasonable possibility the errors contributed to the verdict.

G. *We Decline to Reach the Merits of the State's Confrontation Clause Issue*

As part of his ineffective-assistance-of-counsel claims, Guebara argued that his attorney should have objected to testimony by one of the witnesses, Jacob Fajardo. In Guebara's view, Fajardo was "unavailable" for Confrontation Clause purposes. See U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."). A defendant's rights under the Confrontation Clause are violated "if an unavailable declarant's testimonial statements are brought into evidence against a person without a prior opportunity to cross-examine that declarant." *Logsdon*, 304 Kan. at 36. So to violate that right, the declarant must be unavailable *and* the out-of-court statements must be "testimonial."

The panel determined that Fajardo was "unavailable" because the evidence showed that he "refused to answer all questions related to the subject matter of his out-of-court statements." *Guebara*, 2023 WL 2194542, at *13. But it held that Fajardo's statements either were nontestimonial or were harmless because another witness provided the same testimony. 2023 WL 2194542, at *14. In its conditional cross-petition, the State now argues that the panel's holding on unavailability conflicts with our caselaw

31

addressing whether a witness who answers some questions, but refuses to answer others, is "available" for Confrontation Clause purposes. See, e.g., *State v. Carter*, 278 Kan. 74, 79-80, 91 P.3d 1162 (2004); *State v. Osby*, 246 Kan. 621, 632-33, 793 P.2d 243 (1990).

We decline to reach the merits of the State's challenge for prudential reasons. First, as the panel acknowledged "Guebara does not identify the specific Fajardo statements" that his attorney should have objected to. *Guebara*, 2023 WL 2194542, at *13. Even so, the panel reviewed the record and determined that "several salient facts [were] provided through Fajardo's statements." 2023 WL 2194542, at *13. But as we noted above, appellate courts should "not speculate as to the statements [the defendant] seeks to challenge" when the defendant has failed to identify them. *Robinson*, 293 Kan. at 1027. And we will not perpetuate Guebara's failure to preserve the issue by addressing the merits of the State's petition.

Second, the panel already concluded that Guebara's ineffective-assistance claim ultimately failed because, even if Fajardo were unavailable, his statements were either nontestimonial or harmless. And Guebara challenged neither holding on appeal. As a result, even if we addressed the merits and agreed with the State that the panel's Confrontation Clause analysis was incorrect, the result would be the same.

CONCLUSION

Because we have determined that the errors relating to Guebara's stipulation were harmless beyond a reasonable doubt, we affirm his convictions. Judgment of the Court of Appeals affirming in part and reversing in part the district court is affirmed in part and reversed in part. Judgment of the district court is affirmed.